Appellant was indicted by the August, 1979, session of the Jefferson County grand jury for violation of the Alabama Uniform Controlled Substances Act, § 20-2-1, et seq., Code of Alabama 1975. In the first count of the two-count indictment, appellant was charged with the illegal possession of phentermine, codeine and pentazocine, and in the second count he was charged with the unlawful possession of 77.1 grams of marijuana. After a trial by jury the appellant was found guilty as charged. The trial court sentenced him to three years imprisonment. At arraignment and throughout the trial proceedings, appellant was represented by appointed counsel.
The State called as its first witness Jefferson County Deputy Sheriff Richard Thrasher. He stated that he had been assigned to the vice and narcotics division for approximately eighteen months. On April 17, 1979, Deputy Thrasher assisted in the execution of a search warrant of the appellant's residence, located at Route 2, Box 235A, Pinson, Alabama, in Jefferson County. He searched one of the bedrooms and discovered what appeared to be twenty-two marijuana plants. Deputy Thrasher stated that no one else was present in the bedroom when he searched it although three persons other than law enforcement personnel were in the house when the search warrant was executed. Appellant was not present when the search began although he was brought to the house about fifteen minutes after the warrant was executed.
Jefferson County Deputy Sheriff J.H. Yarbrough testified that he had been a member of the vice and narcotics division for approximately five years. He stated that he had a search warrant issued to him to search the residence located at Route 2, Box 235A, Pinson, Alabama, for drugs. He stated that the warrant was executed at 3:50 p.m. on April 17, 1979. Deputy Yarbrough stated that Deputy Dennis Blanton was in charge of receiving and recording any evidence discovered during the search. He stated that he received several marijuana-like plants discovered by Deputy Thrasher. Deputy Yarbrough stated that, upon entering the house, he saw two females in the living room. He identified himself, stated his purpose, and exhibited the search warrant to one of them. He asked one of the ladies the whereabouts of the appellant to which she replied that he was outside. Both women informed Deputy Yarbrough that they did not reside at the house.
Deputy Yarbrough searched the living room wherein he found, among other things, fifty yellow capsules in a plastic container on the coffee table. He also found several hand-rolled cigarettes, cigarette papers, and an alligator clip on the end table.
Deputy Yarbrough testified that, after all the evidence seized during the search had been bagged and labeled, it was placed in a large grocery bag and locked in the trunk of his car. He stated that he sorted the material at his office and placed that pertaining to the appellant in an envelope which he turned over to Ms. Mary Alice Rhodes. Deputy Yarbrough testified that every item seized remained under his control until relinquished to Ms. Rhodes and was in the same condition throughout his possession. He stated that all the items discovered were kept by him under his care and custody until he turned them over to the State Department of Forensic Sciences. He stated that the items were in the same condition when given to the toxicologist, Mary Rhodes, as they were when he initially received them.
Deputy Yarbrough testified to statements made by the appellant after he was arrested and given his Miranda warnings. Appellant stated that he understood his rights. He stated that the statements were made while transporting him to the county jail. He stated that the drive took approximately twenty-five to thirty minutes. No objection was made to the admission of the statements.
Deputy Yarbrough stated that the appellant admitted ownership of the plants found by Deputy Thrasher. He admitted that the searched house was his residence and stated ". . . that all we had him on was reefer." *Page 723 
In reference to the fifty yellow capsules found in the living room, the appellant stated that a girl, who had a prescription for them, had brought them attempting to sell them. The appellant would not identify the name of the girl.
Deputy Yarbrough received several items from Deputy Dennis Blanton, including evidence discovered by Deputy Blanton in a bedroom, as well as evidence discovered on the appellant by Deputy J.E. Brooks.
Jefferson County Deputy Sheriff Dennis Blanton testified to assisting in the April 17, 1979, search of appellant's residence. He stated that his primary function was to record any evidence seized and turn it over to Deputy Yarbrough. He stated that he searched a bedroom, which, apparently was used by the appellant, and seized various assorted pills and a quantity of plant material resembling marijuana. He stated that he was the only person to search the bedroom and saw men's clothing in and around the room. Deputy Blanton testified that he received a quantity of pills, marijuana, and hypodermic needles from Deputy J.E. Brooks. He turned them over to Deputy Yarbrough.
Ms. Mary Alice Rhodes testified that she was employed by the State Department of Forensic Sciences with her duties centered primarily upon the analyses of drugs. She reviewed her training, experience, and qualifications to perform such analyses and her qualifications were not questioned by appellant. She described in detail the tests performed on each substance.
On June 9, 1979, Ms. Rhodes received an envelope from Deputy Yarbrough containing evidence seized during the April 17, 1979, search of the appellant's residence. She testified that the contents were under her sole care, control, and custody and were in the same condition at trial as when they were received, except for the removal of certain portions for analysis. She stated that, on August 1, 1979, she conducted an analysis of each of the substances contained in the envelope. Her tests revealed that the fifty yellow capsules found in the appellant's living room by Deputy Yarbrough contained phentermine; the plant material and contents of the hand-rolled cigarettes were marijuana; and three tablets discovered by Deputy Blanton in what appeared to be the appellant's bedroom contained codeine with another three containing pentazocine. The envelope and its contents were admitted into evidence without objection. Ms. Rhodes stated that two of the bags inside the envelope contained non-controlled substances and were commonly referred to as diet pills.
Jefferson County Deputy Sheriff William B. Carson testified that, on April 17, 1979, appellant's residence was included in his patrol area. Around 4:00 p.m. he arrived at the house but did not participate in the search. Rather, he remained outside by the patrol cars where he saw the appellant crouching in a wooded area behind the house. Deputy Carson testified that the appellant bobbed up and down as if he were looking around. The appellant, apparently unaware of Deputy Carson, moved toward him while remaining in his crouched position. When Deputy Carson lost sight of him, he called for assistance and apprehended him. The appellant was found lying in the underbrush near his residence. Deputy J.E. Brooks assisted in appellant's capture and stated to Deputy Carson that ". . . this is the man we are looking for." Deputy Carson returned to his post while Deputy Brooks escorted appellant to the house.
Jefferson County Deputy Sheriff J.E. Brooks testified that he assisted in the April 17, 1979, search of appellant's residence and in the capture of him. He stated that, after taking appellant to the front yard, he searched him and found on his person thirty white tablets and twenty-four capsules of two types. He turned them over to Deputies Blanton and Yarbrough. Deputy Brooks also found some syringes in the living room.
The appellant called his mother, Mrs. Jackie Yarbrough, to testify in his behalf. She stated that, on July 28, 1978, the appellant had been involved in an automobile accident and as a consequence was hospitalized *Page 724 
intermittently until the end of the year. She stated that he was prescribed numerous medicines, two of which were Tylenol 3 and Talwin, the brand names for medicines containing codeine and pentazocine, respectively. She testified that she would place several tablets of all his medicines in one bottle so that he would have some of each with him at all times. Mrs. Yarbrough stated that she filled two or three bottles in this manner. She would place the excess as well as the excess of her mother's medicine, who was also ill, in one large bottle. She stated that she knew the difference in each medicine.
Mrs. Yarbrough testified that the appellant lived with her until the early part of 1979, when he moved to Pinson. He had taken his medicine with him when he moved. She stated that she had heard of other people living with the appellant and two to three weeks prior to his arrest visited his residence wherein she found women's clothing, children's toys, and a playpen. She stated that the appellant was not married and had no children.
Continuing, Mrs. Yarbrough stated that she had the appellant's prescriptions refilled many times, but did not refill them after he moved to his residence as he had about a four-month's supply on hand. She stated that the prescriptions were filled at the Veterans Administration Hospital and she did not know if there was any limit to the number of refills. She stated that his antibiotics were dispensed in quantities ranging from two hundred to five hundred tablets while the Tylenol 3 and Talwin were probably dispensed in quantities of fifty each.
Mr. James F. Cooper, Jr., testified that he had known the appellant all his life and had visited him at his house several times. He stated that the appellant rented his residence and knew that two women, one with a child, lived with him.
After the close of all the evidence, the appellant generally moved to exclude the State's evidence, stating no specific grounds. The trial court overruled his motion.
Appellant's only issue on appeal deals with the sufficiency of the State's evidence, raised by his motions to exclude the State's evidence and for a new trial. Both motions were general in nature stating no specific grounds.
At the outset we note that pentazocine is a controlled substance in Alabama, being added pursuant to the procedure outlined in § 20-2-20 (d) Code of Alabama 1975.21 C.F.R. § 1308.14 (1980); 44 Fed.Reg. 2169 (1979); McCurley v. State, Ala., 390 So.2d 25. Phentermine was controlled in the same manner. § 20-2-20 (d), supra; 38 Fed.Reg. 15719, 1572 (1973); 39 Fed.Reg. 22140, 22143 (1974); 21 C.F.R. § 1308.14 (1980).
A motion to exclude must state proper specific grounds or it may be properly overruled by the trial court. Ward v. State, Ala.Cr.App., 376 So.2d 1112, cert. denied, Ala.,376 So.2d 1117; Skelton v. City of Birmingham, Ala.Cr.App.,368 So.2d 877, cert. denied, Ala., 368 So.2d 880, cert. denied,444 U.S. 804, 100 S.Ct. 24, 62 L.Ed.2d 17; Freeman v. State, Ala.Cr.App., 350 So.2d 768; 6A Alabama Digest Criminal Law 752.
A ruling on the motion for a new trial is a matter resting largely in the sound discretion of the trial court, and this court will indulge in every presumption in favor of the correctness of the trial court's ruling. Jenkins v. State, Ala.Cr.App., 384 So.2d 1135; cert. denied, Ala.,384 So.2d 1141; Henley v. State, Ala.Cr.App., 361 So.2d 1148, cert. denied, Ala., 361 So.2d 1152; 6B Alabama Digest Criminal Law
911; 7 Alabama Digest Criminal Law 1144.18. See also Sandlin v.City of Birmingham, 24 Ala. App. 462, 136 So. 481; § 15-17-5
Code of Alabama 1975.
In order to convict a defendant of the offense of possession of a prohibited drug or substance, the State must prove actual or constructive possession of the narcotics by the defendant, coupled with knowledge of the presence of the drug. Roberts v.State, Ala.Cr.App., 349 So.2d 89, cert. denied, Ala.,349 So.2d 94; and cases *Page 725 
cited therein. Possession may be proven by showing: ". . . (1) Actual or potential control; (2) Intention to exercise dominion; and (3) External manifestation of intent and control. . . ." McCord v. State, Ala.Cr.App., 373 So.2d 1242, quotingWilliams v. State, Ala.Cr.App., 340 So.2d 1144, cert. denied, Ala., 340 So.2d 1149. Where constructive possession is relied upon, the State must prove knowledge of the prohibited substance beyond a reasonable doubt. Hancock v. State, Ala.Cr.App., 368 So.2d 581, cert. denied, Ala., 368 So.2d 587. Such may be proven by circumstantial evidence. Blaine v. State, Ala.Cr.App., 366 So.2d 353.
The offense of unlawful possession of illegal drugs is susceptible of joint commission and the guilt of the accused does not necessarily depend upon proof of his ownership of the prohibited substance. Radke v. State, 292 Ala. 290,293 So.2d 314; Rogers v. State, Ala.Cr.App., 353 So.2d 19, cert. denied, Ala., 353 So.2d 24; Henderson v. State, Ala.Cr.App.,347 So.2d 540, cert. quashed, Ala., 347 So.2d 543; and cases cited therein.
After a careful and comprehensive review of the State's evidence, we find it legally sufficient for the trial court to have overruled appellant's motion to exclude and submitted the facts to the jury for its consideration. We find the evidence amply supported the verdict of the jury. As a result, the trial court properly overruled appellant's motion for a new trial.Laffitte v. State, Ala.Cr.App., 370 So.2d 1108, cert. denied, Ala., 370 So.2d 1111; § 20-2-70 (a), Code of Alabama 1975; 8 Alabama Digest, Drugs and Narcotics Key No. 117.
A careful search of the record reveals no error injuriously affecting the substantial rights of the appellant. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.