Possession of methaqualone; fifteen years' imprisonment.
On the afternoon of February 21, 1981, a search warrant was executed at a house located at 506 West Grand Avenue in Muscle Shoals, Alabama. Two brown paper bags sealed with duct tape were found under a bed. Inside the paper bags were fifteen small plastic "baggies," each containing approximately one hundred white pills. These pills were later determined to contain methaqualone. The search also yielded a bag of plant material later identified to be marijuana. Appellant was present in the house at the time of the search, along with Kathy Davenport, Sheryl Davenport, and Tommy Grissom.
Kathy Davenport was called as the court's witness. She testified that the house at 506 West Grand was rented in her name and that her sister, Sheryl, lived there with her. Appellant was a friend of Sheryl's and frequently stayed overnight at the house, although his permanent residence was at his sister-in-law's. Appellant stayed at Davenport's house an average of three to four nights a week and had spent the night before the raid there.
The paper bags containing the pills were found in the bedroom occupied by Sheryl. According to Davenport, appellant and Sheryl "shared" this room, meaning that appellant had "some clothes and some things" in the room and used the room to change clothes. Appellant did not sleep in that room; he slept on the sofa in the living room.
The witness was confronted with a written statement she had given to police shortly after the search in which she had stated that appellant and Sheryl slept in the bedroom on the southwest corner of the residence. She denied making this statement, maintaining that she had said appellant and Sheryl "shared" this room. She also denied making the statement that "[t]he room where the officers found the illegal drugs belonged to my sister Sheryl Davenport and Charlie Campbell."
Lt. Doug Aycock of the Sheffield Police Department, Capt. Robert Hall of the Muscle Shoals Police Department, and Colbert County Deputy Sheriff Ronnie May all testified that the house at 506 West Grand had been under surveillance for approximately two weeks prior to the raid. Although the officers observed many people coming and going, Kathy Davenport, Sheryl Davenport, and appellant were at the house most frequently. Aycock and Hall stated that they observed appellant at the house every day except one during the surveillance period.
All three officers participated in the search and Aycock actually found the paper bags containing the pills. Aycock stated that there were both men's and women's clothes in the bedroom where the drugs *Page 720 
were found. Some of the clothing was in the closet, some was on a dresser.
At the conclusion of the search, appellant, Sheryl, Kathy, and Grissom were taken to the police station for questioning. According to Deputy May, appellant was given his Miranda
warnings, but did not make a written statement. Shortly afterward May heard the following conversation between appellant and Aycock:
 "Doug Aycock came into the room [where appellant was being interrogated] and said `Hey, Charlie.' Charlie said `Hi, Doug.' Doug asked him when was the last time he had seen Joe Adams and, ah, Charlie said, `Well, the only Joe Adams I know sells beer in Huntsville and it's been awhile since I seen him' or something to that effect. And Doug said `Well, I think I'm talking about a different one.' Charlie asked Doug, he said, `Why have you got the rest of those people in here for?' And Doug said, `We're just talking to them.' He said, `Well, Doug you know that stuff is not theirs'".
Aycock testified that appellant told him, "Those kids doesn't [sic] know anything about that stuff." However, Aycock stated that the conversation took place in the hallway outside the room where appellant was being questioned.
At the close of the State's case appellant made a motion to exclude, which was denied.
Appellant called Sheryl Davenport, who testified that she had pleaded guilty to the offense of possessing methaqualone and was presently serving time for that conviction. According to Sheryl, a friend of hers, Art Burleson, brought the two brown paper bags to the house on the morning of February 20, and requested her to keep them until the next afternoon. Burleson told her the packages contained drugs and said that he would pick them up by 4:00 P.M. the next day. At 3:40 the next day, the police searched the house and found the drugs.
Sheryl stated that appellant was not at the house when Burleson brought the drugs over. Further, appellant kept some clothes in her closet, but he did not sleep in her room. She denied being in love with appellant and maintained that she would not take the "rap" for anybody, but neither would she put the blame on someone else for something she had done.
 I
Appellant contends that the trial court erred in denying his motion to exclude because the State's evidence was not sufficient to prove his possession of the pills containing methaqualone.
Clearly, appellant was not in actual possession of the pills. However, possession of an illegal substance may be either actual or constructive. Radke v. State, 52 Ala. App. 397,293 So.2d 312 (1973), aff'd, 292 Ala. 290, 293 So.2d 314 (1974).
Constructive possession arises only where the illegal substance is found on premises owned or controlled by the accused. Williams v. State, 340 So.2d 1144 (Ala.Cr.App. 1976), cert. denied, 340 So.2d 1149 (Ala. 1977). Appellant argues that he neither owned nor controlled the premises at 506 West Grand, relying on Crane v. State, 401 So.2d 148 (Ala.Cr.App.), cert. denied, 401 So.2d 151 (Ala. 1981); Collins v. State,391 So.2d 1078 (Ala.Cr.App. 1980); and Williams v. State, supra, to support his argument. In Crane, Collins, and Williams this court found no evidence to show the appellants' control over the premises where illegal drugs were found.
The facts in the present case are, in our judgment, markedly different. The evidence shows that appellant kept clothing and "some things" in the bedroom in which the pills were found. Appellant also used that room to change clothes. Whether he slept in that room or not, it is clear that appellant had ready access to the room. In addition, appellant had been seen at the house every day except one in the two weeks prior to the raid.
When constructive possession is relied on, the State must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled *Page 721 
substance. Yarbrough v. State, 405 So.2d 721 (Ala.Cr.App. 1981). This knowledge may be inferred from the accused's exclusive possession, ownership, and control of the premises. See Temple v. State, 366 So.2d 740 (Ala.Cr.App. 1979). Where the accused is not in exclusive possession of the premises, however, this knowledge may not be inferred "unless there are other circumstances tending to buttress this inference."Temple, supra. Judge Bowen, writing for this court in Temple, enumerated several circumstances which may provide the necessary connection between an accused and contraband to buttress the inference that he knew of its presence. One of the circumstances enumerated is an admission by the defendant tending to show his connection with the drugs.
Appellant stated to Lt. Aycock in Deputy May's presence either "Those kids [don't] know anything about that stuff," or "You know that stuff is not theirs." Either statement raises an inference that the appellant was aware of the presence of the drugs.
In our judgment, the evidence was sufficient to show both appellant's constructive possession of the methaqualone and his knowledge of its presence. The motion to exclude was properly overruled.
 II
Appellant maintains that the trial court should have granted his motion for new trial in which he alleged that the State failed to prove he was in possession of the illegal drugs and that the verdict was contrary to the evidence presented. Our discussion in Part I disposes of the first allegation.
The evidence adduced by the State and the appellant was conflicting and therefore clearly presented a jury question.Gunn v. State, 387 So.2d 280 (Ala.Cr.App.), cert. denied,387 So.2d 283 (Ala. 1980). A motion for new trial on the grounds that the verdict is contrary to the evidence will not be granted "where it affirmatively appears that the questions involved are for the determination of the jury unless it is clearly apparent that the verdict is palpably wrong or unjust."Smith v. State, 342 So.2d 422 (Ala.Cr.App. 1977). We do not think the verdict in this case is "palpably wrong or unjust."
 III
Appellant claims that the methaqualone tablets were inadmissible because they were seized pursuant to a search warrant which was invalid because it authorized a "general exploratory search" in violation of the Fourth Amendment.
To support his claim, appellant relies on Peavy v. State,336 So.2d 199 (Ala.Cr.App.), cert. denied, 336 So.2d 202 (Ala. 1976), wherein this court held a search warrant invalid as a "dragnet instrument." In Griffith v. State, 386 So.2d 771
(Ala.Cr.App.), cert. denied, 386 So.2d 775 (Ala. 1980), we observed:
 "In Peavy the affidavit alleged that there were `controlled substances in a mobile home.' The search warrant authorized a search of all persons `present in or near said mobile home and any motor vehicle adjacent to said mobile home.' When the warrant was executed twenty people were in the mobile home and twelve automobiles were parked outside."
The circumstances in the present case are very different. The affidavit recited that information had been received from a reliable informant that "illegal drugs, to-wit: Marijuana" were presently contained "in the residence of Kathy Davenport, Sharal [sic] Davenport, and Charles Campbell, 506 West Grand Avenue, Muscle Shoals," and also "inside one (1) 1969 Beige Volkswagon [sic] automobile, one (1) 1973 Brown and Gold Torino automobile, and one (1) 1965 Green Chevrolet automobile, said vehicles normally being kept at the above residence." The search warrant stated that affiant "says that he has probable cause for believing and does believe that Sharal [sic] Davenport and Charles Campbell have in their possession at this time at their residence located at 506 West Grand Avenue . . . illegal drugs, to-wit: Marijuana" and *Page 722 
authorized a search of "the persons and their residence located at 506 West Grand Avenue," including the automobiles described above.
This search warrant is far more limited than the warrant condemned in Peavy v. State, supra. We conclude that the seizure of the pills containing methaqualone was not the result of a general exploratory search and therefore the pills were properly admitted. See Satterwhite v. State, 364 So.2d 345
(Ala.Cr.App. 1977), rev'd on other grounds, 364 So.2d 359 (Ala. 1978).
 IV
Appellant asserts that the affidavit underlying the search warrant was defective, and therefore, that the search warrant was invalid and the evidence seized during the search should have been suppressed.
Appellant first attacks the affidavit because it recites Tom Berryman's name as affiant in the body, yet Robert Hall has signed as affiant. The Court of Appeals in Sopcjak v. State,42 Ala. App. 608, 173 So.2d 403 (1965), held that where the affiant did not appear before the issuing magistrate, the warrant was void. It is clear from the record in the present case that Hall was actually the affiant and had appeared before the issuing judge and attested to the validity of the information contained in the affidavit. He testified at the suppression hearing that Lt. Berryman was his partner and both of them had received the information from the informant. The fact that Berryman's name was typed in as affiant was a mere clerical mistake and, at most, amounted to harmless error.
Appellant also maintains that the affidavit "did not show that the informant had a basis in fact from which the magistrate could infer that the factual representations were true."[1] The affidavit recites, in pertinent part:
 "The aforesaid informant stated that he saw the illegal drugs at said residence within the past 24 hours and that the substance at said residence did in fact appear to be Marijuana and was in the possession of the said Sharal [sic] Davenport and Charles Campbell. Informant further stated that he saw what appeared to be Marijuana located inside [three described automobiles]."
The informant's personal observation of the illegal drugs was clearly sufficient to form the basis for his representation that the drugs were on the premises. See Thornton v. State,390 So.2d 1093 (Ala.Cr.App.), cert. denied, 390 So.2d 1098 (Ala. 1980); Grissom v. State, 386 So.2d 514 (Ala.Cr.App. 1980).
Appellant argues that the affidavit failed to show probable cause to search the house. As quoted above, the informant stated that he saw illegal drugs "at said residence." The term "at said residence" clearly includes the house. See Griffith v.State, supra.
We find no defect in the affidavit which would invalidate the search warrant. Therefore, the trial court correctly denied appellant's motion to suppress.
 V
The search warrant was not returned until the date of trial. Appellant contends that this violated § 15-5-12, Code of Alabama 1975, and constituted reversible error.
Section 15-5-12 requires that a warrant be executed and returned within ten days of issuance; "after that time, if notexecuted, it is void." (Emphasis added). A failure to return
the warrant within the allotted ten days will not invalidate the warrant or a search and seizure made thereunder because the return is "merely a ministerial act which may be performed later, at least within a reasonable time." Donovan v. State,359 So.2d 1181 (Ala.Cr.App. 1978) (emphasis added).
"A reasonable time" will vary depending on the circumstances of each case, *Page 723 
but generally will not extend to the date of trial. A search warrant should be returned sufficiently in advance of trial to enable defense counsel "to see, inspect and examine same and chart the course of their defense." Owens v. State, 51 Ala. App. 50, 282 So.2d 402, cert. denied, 291 Ala. 794, 282 So.2d 417
(1973).
We certainly do not condone the practice of officers keeping search warrants in their possession until the time of trial. See Owens v. State, supra. However, in this case appellant has made no allegation that he was unable to see the affidavit and search warrant or obtain copies thereof prior to trial. In fact, substantial portions of the affidavit are quoted in appellant's motion to suppress, leading us to conclude that appellant was allowed to review and/or copy the warrant and affidavit prior to trial. We find no showing of any prejudice to appellant because of the failure to return the warrant until the date of trial.
 VI
Appellant asserts that the district attorney made a highly prejudicial statement during closing argument which warrants reversal of his conviction. The statement complained of, "he [appellant] had this sacked up for sale," was a legitimate inference drawn from the evidence and properly argued by the district attorney. See Green v. State, 389 So.2d 537
(Ala.Cr.App.), cert. denied, 389 So.2d 541 (Ala. 1980); Malonev. State, 406 So.2d 1060 (Ala.Cr.App.), cert. denied,406 So.2d 1066 (Ala. 1981).
We have reviewed every contention raised by appellant and have found no reversible error. Therefore, the judgment of conviction by the Colbert Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.
[1] Appellant does not challenge the informant's reliability. We note that the affidavit recited sufficient facts from which the issuing judge could have found that the informant was reliable.