The appellant, Eddie Frank Goodloe, was convicted of trafficking in marijuana, a violation of § 13A-12-231, Ala. Code 1975, and unlawful possession of drug paraphernalia, a violation of § 13A-12-260, Ala. Code 1975. For the trafficking conviction, he was sentenced to 12 years' imprisonment. Because at the time of that offense Goodloe was in possession of a firearm, that sentence was enhanced by 5 years, pursuant to § 13A-12-231(13), and he was sentenced to a total of 17 years' imprisonment on that conviction. For the possession-of-drug-paraphernalia conviction, Goodloe was sentenced to 12 months' imprisonment; that sentence was to run concurrently with his sentence for trafficking.[1]
Goodloe contends that the state failed to establish a prima facie case of trafficking in marijuana and illegal possession of drug paraphernalia. Specifically, he argues that, because he was standing on the porch when the search that produced the marijuana and the drug paraphernalia was conducted, there was no evidence that he possessed the marijuana and drug paraphernalia.
The state's evidence tends to establish the following. Rolando Bogran, a Florence police officer, testified that on May 31, 1999, he received information from a confidential informant that cocaine and marijuana were located in a house at 1902 Shade Avenue in Florence. Officer Bogran stated that he and several other officers participating in the Lauderdale County drug task force executed a search warrant at the residence at around 4:00 p.m. on May 31. Jeremy Turner, an investigator for the Lauderdale County district attorney's office, testified that when the members of the task force arrived Goodloe was standing on the porch to the house, where he was barbecuing. Testimony indicated that, because it was Memorial Day, at least six adults, including Goodloe, were present during the search.
The record indicated that the search of the house produced several items, including 10 large plastic bags containing marijuana that were found in a suitcase in what could be characterized as a spare bedroom/storage room; four weapons that were located in Denita Goldsmith's (the codefendant's) bedroom; a partial marijuana cigarette that was found on a coffee table in a den; several small bags of marijuana and a small amount of cocaine that were found in the den; a "Tenita" brand digital scale and a razor blade that were found in a drawer in the den; a bullet-proof vest found on a sofa in the den; two weapons that were found in the den; and a police scanner that was found in the den. *Page 933 
Officer Bogran testified that the scale found in the drawer in the den was of a type often used by drug dealers. Additionally, Officer Bogran stated that a razor blade was found in the drawer near the scales, and that crack cocaine dealers usually use razor blades.
Ray Rikard, the manager of an insurance company, testified that, in his life insurance contract, Goodloe listed his address as 1902 Shade Avenue. Officer Bogran stated that, after the search of the residence, he questioned Goodloe regarding general information, such as his name, his date of birth, and his address, and Goodloe indicated that he lived in the residence that was searched. Jackie Rickard, a Lauderdale County jail administrator, testified that when she booked Goodloe, he told her that he lived at 1902 Shade Avenue. Additionally, there was testimony indicating that Goldsmith also resided in the house.
Selwyn Jones, a forensic scientist, testified that she analyzed the substance in the ten bags found in the suitcase in the guest bedroom, and that the substance was marijuana. Jones stated that the total weight of the marijuana contained in the bags was 9.67 pounds.
Carlotta Foster, a friend of Goodloe's, testified that Goodloe did not reside at the house that was searched and that he lived with his grandmother.
Section 13A-12-231(1), Ala. Code 1975, states, in pertinent part:
 "(1) Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, in excess of one kilo or 2.2 pounds of any part of the plant of the genus Cannabis . . . is guilty of a felony, which felony shall be known as `trafficking in cannabis.'"
Section 13A-12-260(c), Ala. Code 1975, provides:
 "(c) Use or possession with intent to use. — It shall be unlawful for any person to use, or to possess with intent to use, or to use to inject, ingest, inhale or otherwise introduce into the human body, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, repack, store, contain or conceal a controlled substance in violation of the controlled substances laws of this state."
The term "drug paraphernalia" includes "[s]cales and balances used, intended for use, or designed for use in weighing or measuring controlled substances." Section 13A-12-260(a)(5), Ala. Code 1975.
The evidence presented at trial clearly establishes that Goodloe was not in actual possession of the controlled substances and drug paraphernalia found in his house. Therefore, the state was required to prove that Goodloe was in constructive possession of the controlled substances and drug paraphernalia.
 "`In order to sustain a conviction for possession of controlled substances, there must be sufficient evidence of either actual or constructive possession. Radke v. State, 52 Ala. App. 397, 293 So.2d 312 (1973), affirmed, 292 Ala. 290, 293 So.2d 314 (1974). "Just as the mere presence of a person at the time and place of a crime is not sufficient to justify a conviction for the commission of that crime, . . . so the mere presence of the accused in a place where the controlled substance is found is not in and of itself evidence of possession." German v. State, 429 So.2d 1138, 1140
(Ala.Cr.App. 1982).'
"Menefee v. State, 592 So.2d 642, 644 (Ala.Cr.App. 1991).
". . . . *Page 934 
 "`When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances. Campbell v. State, [439 So.2d 718 (Ala.Cr.App), rev'd on other grounds, 439 So.2d 723 (Ala. 1983)]; Yarbrough v. State, 405 So.2d 721 (Ala.Cr.App. 1981), cert. denied, 405 So.2d 721 (Ala. 1981). This knowledge may be inferred from the accused's exclusive possession, ownership, and control of the premises. Temple v. State, 366 So.2d 740
(Ala.Cr.App. 1978). When the accused is not in exclusive possession of the premises, however, this knowledge may not be inferred unless there are other circumstances tending to buttress this inference. Korreckt v. State, 507 So.2d 558 (Ala.Cr.App. 1986); Temple v. State, [366 So.2d at 743]. While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Grubbs v. State, 462 So.2d 995
(Ala.Cr.App. 1984); Temple v. State.'
 "Robinette v. State, 531 So.2d 682, 686 (Ala.Cr.App. 1987), rev'd on other grounds, 531 So.2d 697 (Ala. 1988).
". . . .
 "In Temple v. State, 366 So.2d 740 (Ala.Cr.App 1978), this court provided a nonexclusive list of circumstances that may establish a connection between a defendant and the contraband found on the defendant's property when the defendant is not in exclusive possession of the premises.
 "`While the kinds of circumstances which may provide a connection between a defendant and the contraband are unlimited and will naturally depend on the facts of each particular case, 56 A.L.R.3d 948 (1974), it has generally been stated that:
 "`"The kinds of circumstances which provide such connection are: (1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that an illicit drug will be found; (5) evidence that debris of the contraband was found on the defendant's person or with his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence.
 "`"The kinds of evidence which might be relevant, but which by themselves do not add the necessary connection are: (1) admissions of previous use; (2) conduct that might be construed as evidencing a consciousness of guilt which was not displayed upon the defendant's confrontation of the possibility that an illicit drug would be discovered; (3) evidence of previous use; (4) evidence that showed the defendant's physical proximity to the contraband."
"`9 Land and Water L.Rev 236, 248-49 (1974).'
"366 So.2d at 743."
Posey v. State, 736 So.2d 656, 658-59 (Ala.Crim.App. 1997).
In this case, at the time of the search, Goodloe and at least five additional people, *Page 935 
including Goldsmith, who also lived at the house and whose bedroom contained several weapons, were present. Because Goodloe was not in exclusive control of the premises, more evidence than evidence of his mere presence was required to show that Goodloe had knowledge of the presence of the marijuana and the drug paraphernalia.
The evidence presented, however, did not connect Goodloe with the marijuana and the drug paraphernalia. The evidence presented did not exclude as possible possessors all the other individuals present. None of the testimony indicated that Goodloe engaged in the distribution of marijuana. No testimony was presented indicating that the house smelled of marijuana. Goodloe was outside at the time of the search. One man — not Goodloe — claimed the marijuana cigarette, the small bags of marijuana, and the cocaine, all of which was found in the den. The mere facts that Goodloe was present at the time of the search and that he lived at the residence, in light of the number of other people who had had access to his house at the time of the search, are insufficient to prove that he had knowledge of the presence of the suitcase filled with marijuana in the guest bedroom or knowledge of the presence of the drug paraphernalia.
We have carefully reviewed this record; none of the evidence presented connected Goodloe with the marijuana. Officer Bogran testified that it appeared that no one lived in the guest bedroom where the suitcase containing the marijuana was found. No testimony was presented linking Goodloe to the bedroom. No statements were admitted indicating that Goodloe frequented that room. Although testimony indicated that dirty clothes were found in the room, the testimony did not indicate that those clothes belonged to Goodloe. Nothing in the record indicates that any of Goodloe's possessions were in that bedroom. No fingerprint evidence was admitted to connect Goodloe with the room, much less the suitcase. Indeed, Goldsmith admitted to the officers that the safe located in the room belonged to her. Goodloe did not admit to the previous use of marijuana; he did not engage in conduct that could be construed as exhibiting a consciousness of guilt; he did not have any marijuana on his person; and he was not found in close physical proximity to the marijuana. The evidence presented simply does not connect Goodloe to the marijuana. Posey, supra.
In order to sustain a conviction based on circumstantial evidence, this Court must consider the evidence in a light most favorable to the state and determine "whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt." Cumbo v. State, 368 So.2d 871,874 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).
Because Goodloe was not in exclusive control of the premises where the marijuana was found, the circumstantial evidence had to establish a connection between Goodloe and the marijuana that excluded every reasonable hypothesis except guilt. Here, there was not one single piece of evidence, direct or circumstantial, that tended to connect Goodloe more than any other adult at the house at the time of the search with the suitcase of marijuana found in the guest bedroom, except for the evidence that Goodloe lived at the house. A verdict simply cannot be sustained on such evidence.
Likewise, the evidence is insufficient to connect Goodloe to the drug paraphernalia found in the drawers in the den. At least two adults, other than Goodloe, were in the den when the officers entered the residence. Indeed, one of the other adults at the party admitted that he owned the drugs found in the den. The record does not contain any testimony that connected *Page 936 
Goodloe with the drug paraphernalia. For instance, no testimony was presented that any of Goodloe's possessions were found in the den drawer that contained the drug paraphernalia, and no evidence, such as fingerprint evidence, was admitted indicating that Goodloe had been in close proximity to the drawer. The evidence presented simply does not connect Goodloe to the drug paraphernalia found at his house during the search, a time when Goodloe was not in exclusive possession of the premises. Therefore, the evidence did not sufficiently link Goodloe with the drug paraphernalia and will not sustain a verdict for possession of drug paraphernalia.
 "`To permit a conviction of this character to stand upon such testimony would be unconscionable. It would be an exceedingly dangerous precedent to hold that the mere finding of prohibited liquor in the home of a citizen, with nothing to connect the accused therewith, and nothing to indicate or to impute any knowledge of the fact to him, is sufficient to deprive him of his liberty and brand him as a criminal before the world. If such were the law, every citizen would be at the mercy of an enemy who by merely surreptitiously placing the inhibited article in the home of his enemy could wreak his vengeance through the aid of the law in this dastardly manner. The law contemplates no such condition, nor will the courts countenance such a thing. The law in its wisdom provides that every person charged with crime is presumed to be innocent, and this presumption is not an empty or meaningless provision; to the contrary, it is regarded as evidence in behalf of the accused, and attends him as such throughout the trial, or until the presumption is overcome by legal evidence which shows his guilt beyond all reasonable doubt and to a moral certainty. Conjectures, suspicions, hatred, prejudices, conclusions, and guesswork have no place in the proper administration of the law; and to willfully hold otherwise would do violence to the conscience and integrity of the person so doing, be he judge, juror, officer, or witness.'
 "Talbot v. State, 23 Ala. App. 559, 129 So. 323 (1930), quoted in Bivens v. State, 27 Ala. App. 304, 305, 171 So. 755, cert. denied, 233 Ala. 304, 171 So. 756 (1936)."
Temple v. State, 366 So.2d 740, 744 (Ala.Crim.App. 1978).
Because the evidence is insufficient to sustain the jury's verdicts the judgment in this case must be reversed and a judgment rendered for Goodloe. Burks v. United States, 437 U.S. 1,98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).
Because we are reversing Goodloe's convictions, we pretermit discussion of the other issues raised.
REVERSED AND JUDGMENT RENDERED.
Long, P.J., and McMillan, Cobb, and Baschab, JJ., concur.
[1] Pursuant to § 13A-12-231(1)(a), Ala. Code 1975, the trial court assessed a $25,000 fine. In accordance with § 13A-12-231(13), Ala. Code 1975, the appellant was fined an additional $25,000. Additionally, the trial court fined the appellant $1,000 pursuant to the Alabama Demand Reduction Assessment Act, and $100 pursuant to the Alabama Forensic Sciences Trust Fund Act.
 *Page 185