FRY, Judge,
concurring specially.
I agree with the majority’s conclusion in its unpublished memorandum that the state presented sufficient evidence to sustain Hudson’s conviction for trafficking in cocaine. In this case, the state, as it did in Goodloe v. State, 783 So.2d 931 (Ala.Crim.App.2000), relied on a theory of constructive possession to connect Hudson to the controlled substance, cocaine. In Goodloe, this Court concluded that the evidence did not establish that Goodloe had constructive possession of the controlled substance. Specifically, the evidence did not show that Goodloe had knowledge of the controlled substance in the suitcase in the guest bedroom of his residence. The facts in this case are somewhat similar, but distinguishable from those in Goodloe, and adequately establish a connection between Hudson and the cocaine.
“ ‘ “In order to sustain a conviction for possession of controlled substances, there must be sufficient evidence of either actual or constructive possession. Radke v. State, 52 Ala.App. 397, 293 So.2d 312 (1973), affirmed, 292 Ala. 290, 293 So.2d 314 (1974). ‘Just as the mere presence of a person at the time and place of a crime is not sufficient to justify a conviction for the commission of that crime, ... so the mere presence of the accused in a place where the controlled substance is found is not in and of itself evidence of possession.’ German v. State, 429 So.2d 1138, 1140 (Ala.Cr.App.1982).”
“ ‘Menefee v. State, 592 So.2d 642, 644 (Ala.Cr.App.1991).
[[Image here]]
‘““When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances. Campbell v. State, [439 So.2d 718 (Ala.Cr.App.), rev’d on other grounds, 439 So.2d 723 (Ala.1983)]; Yarbrough v. State, 405 So.2d 721 (Ala.Cr.App.1981), cert. denied, 405 So.2d 721 (Ala.Crim.App.1981). This knowledge may be inferred from the accused’s exclusive possession, ownership, and control of the premises. Temple v. State, 366 So.2d 740 (Ala.Cr.App.1978). When the accused is not in exclusive possession of the premises, however, this knowledge may not be inferred unless there are other circumstances *1239 tending to buttress this inference. Korreckt v. State, 507 So.2d 558 (Ala.Cr.App.1986); Temple v. State, [366 So.2d at 743]. While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Grubbs v. State, 462 So.2d 995 (Ala.Cr.App.1984); Temple v. State.”
“ ‘Robinette v. State, 531 So.2d 682, 686 (Ala.Cr.App.1987), rev’d on other grounds, 531 So.2d 697 (Ala.1988).
[[Image here]]
“ ‘In Temple v. State, 366 So.2d 740 (Ala.Cr.App.1978), this court provided a nonexclusive list of circumstances that may establish a connection between a defendant and the contraband found on the defendant’s property when the defendant is not in exclusive possession of the premises.
“ ‘ “While the kinds of circumstances which may provide a connection between a defendant and the contraband are unlimited and will naturally depend on the facts of each particular case, 56 A.L.R.3d 948 (1974), it has generally been stated that:
“ ‘ “ ‘The kinds of circumstances which provide such connection are: (1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that an illicit drug will be found; (5) evidence that debris of the contraband was found on the defendant’s person or with his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence.
“ ‘ “ ‘The kinds of evidence which might be relevant, but which by themselves do not add the necessary connection are: (1) admissions of previous use; (2) conduct that might be construed as evidencing a consciousness of guilt which was not displayed upon the defendant’s confrontation of the possibility that an illicit drug would be discovered; (3) evidence of previous use; (4) evidence that showed the defendant’s physical proximity to the contraband.’
“ ‘ “9 Land and Water L.Rev. 236, 248^49 (1974).”
“ ‘366 So.2d at 743.’
“Posey v. State, 736 So.2d 656, 658-59 (Ala.Crim.App.1997).”
Goodloe v. State, 783 So.2d at 933-34.
The evidence presented in this case tended to show the following. On May 19, 1998, Birmingham police officers were attempting to execute an arrest warrant for an individual, not Hudson, who had provided false information to a law enforcement officer. As one of the officers was preparing to knock on a glass storm door of the residence, he looked through the glass and saw Hudson, standing at the dining room table placing a white substance into a plastic bag. The officers entered the residence and handcuffed Hudson. Officer Barry Deed of the Birmingham Police Department testified that as he “passed” custody of Hudson to another officer, he heal’d footsteps in the back of the resi *1240 dence. According to Deed he went immediately to the back of the residence and saw “two black males leaving out of the back of the residence, running, and jumping the back fence.” Although Deed pursued the men, he was unable to catch them. When he returned to the house, Deed began searching each room for other individuals. As he entered a back bedroom, he saw several guns and several plastic bags containing what he believed to be marijuana and cocaine in plain view.
A subsequent search of the residence, conducted pursuant to a warrant, revealed various controlled substances. Analysis of the substances seized indicated that the substance on the dining room table was cocaine, weighing 8.42 grams. Analysis of the other substances found in the residence indicated that the total weight of the cocaine found in the residence (including the cocaine found on the dining room table) was 65.05 grams and the total weight of the marijuana was 320.47 grams. A .12-gauge shotgun was found in the front bedroom and .12-gauge shotgun shells were found in the back bedroom.
The evidence further indicated that Hudson and his brother lived in the residence. Hudson informed law enforcement officers that his brother stayed in the back bedroom and that he stayed in the front bedroom. Hudson also admitted that he knew illegal drugs were present in the residence, but he denied having anything to do with the drugs. According to Hudson, he was eating dinner at the dining room table when the officers entered the residence and that “some guys” threw the bags of cocaine onto the table as they ran out the back door.
In concluding that the state presented sufficient evidence to sustain Hudson’s conviction, the majority, in its unpublished memorandum, emphasizes the following facts:
“The state presented evidence that Hudson resided in the house where the cocaine was found. Hudson was at the scene when the search took place. Officer Deed saw Hudson placing cocaine into a plastic bag in the dining area of the house; on the table in front of Hudson was another bag of cocaine, similarly packaged. The state presented evidence that Hudson knew that cocaine was being sold out of the house. Although Hudson denied his participation in the enterprise, his denial was undermined by the fact that he was seen packaging cocaine.... While the evidence showed that much of the cocaine was found in the back bedroom, where Hudson’s brother stayed, most of the cocaine in the back bedroom was in plain view. Hudson acknowledged ownership of the .12-gauge shotgun found in the front bedroom, where the state’s evidence showed he stayed. A box of .12-gauge shotgun shells was found in the back bedroom, allowing the jury to infer that Hudson had access to the back bedroom and that he was aware of the cocaine located in that room....
“... Hudson’s knowledge of the cocaine throughout the house, plus his ability and intent to exert dominion and control over the cocaine, can be inferred from the fact that he was seen packaging cocaine in the dining area of the house, from his statement to police that he was aware of the presence of illegal drugs in the house and that they were being sold from the house, from the sheer quantity of cocaine and other illegal drugs throughout the house, and from other attendant circumstances.”
Unlike Goodloe, the state in this case established that, although Hudson was not in exclusive control of the premises at the time of the search, Hudson was connected with the cocaine. The testimony indicated *1241 that Hudson had actual possession of a small quantity of cocaine at the time of the search and that he had knowledge by inference of the presence of a large amount of cocaine in the residence.
In order to sustain a conviction based on circumstantial evidence, this Court must consider the evidence in a light most favorable to the state and determine “whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt.” Cumbo v. State, 368 So.2d 871, 874 (Ala.Crim.App.1978), cert. denied, 368 So.2d 877 (Ala.1979). Here, the direct evidence and the circumstantial evidence established a connection between Hudson and the cocaine that excluded every reasonable hypothesis except guilt.