LONG, Presiding Judge.
The appellant, R.W., was indicted on two counts of unlawful possession of a controlled substance, a violation of § 13A-12-212, Ala.Code 1975. Count I of the indictment charged the appellant with the unlawful possession of hydrocodone; Count II of the indictment charged the appellant with the unlawful possession of testosterone cypionate. The appellant applied for, and was granted, youthful offender status. Following a bench trial, the appellant was convicted of the unlawful possession of testosterone cypionate; he was acquitted on the charge of unlawful possession of hy-drocodone. The trial court sentenced the appellant to two years’ imprisonment, but suspended the sentence conditioned on the appellant’s good behavior.
The sole issue raised in this appeal is whether the evidence was sufficient to sustain the appellant’s conviction for possession of testosterone cypionate.
Initially, we note that the State argues that this issue was not preserved for appellate review, because, the State says, the appellant “did not make a motion for judgment of acquittal at trial or by posttrial motion.” (State’s brief to this court, p. 3.) Although we agree that the appellant did not use the term “motion for a judgment of acquittal,” the record reflects that, at the close of all the evidence, the appellant’s trial counsel argued to the court that the State had failed to prove a prima facie case of possession and that, therefore, the court should find the appellant not guilty on both counts in the indictment. We find that counsel’s argument was sufficient to preserve this issue for review.
The evidence adduced at trial tended to show the following. On May 26,1998, Ray Harris, a narcotics investigator with the Abbeville Police Department, and Noel Vanlandingham, a deputy sheriff with the Henry County Sheriffs Department, executed a search warrant at a residence owned by the appellant’s father, A.W. At the time of the search, the appellant was a minor and was living with his father.
During the search, substantial amounts of prescription and/or controlled narcotics were found in the residence. The appellant stipulated that both a vial of testosterone cypionate — an anabolic steroid commonly used to enhance muscle mass and to treat impotency — -and a bottle of hydroco-done — a pain reliever — were found in the residence. Both the testosterone cypionate and the hydrocodone were found in a box underneath the sink in a bathroom in the upstairs portion of the residence. Also found in the same box were the following items: a vial of lidocaine, quinine, orphe-nade, Ornade, Amoxil, amitex, “MMR,” Achromycin, Lodine, cephalexin, pargen forte, Proventil, cyclobenzaprine, Vance-nase, Beconase, and several syringes.
Testimony showed that in the upstairs area of the residence were one bedroom, one bathroom, a sitting room, and a small cubby hole-type storage area that contained a bed. Investigator Harris testified that the appellant told him that the bedroom upstairs was his bedroom. Investigator Harris further testified that he found sports equipment and weightlifting equipment in the appellant’s bedroom. Testimony showed that there was a door leading from the appellant’s bedroom into the bathroom where the hydrocodone and testosterone cypionate were found.
Investigator Harris and Deputy Van-landingham found the following items in the downstairs area of the residence, in the master bedroom and bathroom: Viagra, tussin, paregoric, phenobarbital, Don- *1231 natal, Lomotil, Ornade, an empty bottle labelled as Valium, an empty bottle labeled as Vasotec, an empty bottle labelled as hydrocodone, and a vial of gonadotro-pin. The downstairs bedroom belonged to the appellant’s father. In other areas of the downstairs, the officers found a vial of Nubain, and one bottle of each of the following: Trental, Propulsid, K-Dur 20, Ultram, Maxzide, colchicine, Tenor-min, Vasotec, aidactone, Prozac, Lasix, al-lopurinol, cimetidine, temazepam, Lamisil, Diflucan, prochlorperazine, clindamycin, metoclopramide, metronidazole, and apap/oxycodo.
The record reflects that the appellant’s father was a pharmacist and was diabetic. The record further reflects that the appellant was the only person present in the residence at the time of the search; the appellant’s father was in the hospital at the time. Testimony revealed that approximately one month after the search, in June 1998, the appellant’s father died.
In his defense, the appellant presented evidence that his father had separated from his wife, J.W., several months before the search (they divorced approximately one month before the search), and that before the divorce, his father and J.W. argued frequently, that his father would often sleep upstairs, and that on those occasions his father used the upstairs bathroom where the testosterone cypionate and hydrocodone were found. T.W., the appellant’s brother, testified that he saw his father upstairs several times when he visited, and that he also saw his father’s shaving kit and bath items in the upstairs bathroom. T.W. also testified that he saw his father take hydrocodone on several occasions. T.W. stated that because he was a diabetic, his father was in a lot of pain. T.W. further stated that, prior to his death, his father took a lot of medications that could have caused impotency and that, although his father never told him about a problem, after learning that Viagra was found in his father’s bedroom, he believed that his father was using such medication.
The appellant also called A.B., an employee of A.W. at A.W.’s pharmacy, to testify on his behalf. A.B. testified that she saw A.W. take narcotics from the pharmacy home with him. Specifically, she testified that she saw A.W. take halo-testin, a type of testosterone, and hydroco-done from the pharmacy.
In rebuttal, the State called J.W. to testify. J.W. testified that when she was married to A.W., A.W. never slept upstairs. However, J.W. stated that A.W. went upstairs on other occasions because his hunting gear was kept in the sitting room.
“ ‘In order to sustain a conviction for possession of controlled substances, there must be sufficient evidence of either actual or constructive possession. Radke v. State, 52 AIa.App. 397, 293 So.2d 312 (1973), affirmed, 292 Ala. 290, 293 So.2d 314 (1974). “Just as the mere presence of a person at the time and place of a crime is not sufficient to justify a conviction for the commission of that crime, ... so the mere presence of the accused in a place where the controlled substance is found is not in and of itself evidence of possession.” German v. State, 429 So.2d 1138, 1140 (Ala. Crim.App.1982).’ ”
Posey v. State, 736 So.2d 656, 658 (Ala.Crim.App.1997), cert. quashed, 736 So.2d 661 (Ala.1999), ‘quoting Menefee v. State, 592 So.2d 642, 644 (Ala.Crim.App.1991).
Here, it is undisputed that the appellant was not in actual possession of the testosterone eypionate found in the box under the sink in the upstairs bathroom. Therefore, it was incumbent upon the *1232 State to prove that the appellant was in constructive possession of the contraband.
“ “When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances. Campbell v. State, [439 So.2d 718 (Ala.Crim.App.), rev’d on other grounds, 439 So.2d 723 (Ala.1983)]; Yarbrough v. State, 405 So.2d 721 (Ala.Crim.App.), cert. denied, 405 So.2d [725] (Ala.1981). This knowledge may be inferred from the accused’s exclusive possession, ownership, and control of the premises. Temple v. State, 366 So.2d 740 (Ala. Crim.App.1978). When the accused is not in exclusive possession of the premises, however, this knowledge may not be inferred unless there are other circumstances tending to buttress this inference. Korreckt v. State, 507 So.2d 558 (Ala.Crim.App.1986); Temple v. State, [366 So.2d at 743]. While nonexclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Grubbs v. State, 462 So.2d 995 (Ala.Crim.App. 1984); Temple v. State.’ ”
Posey, 736 So.2d at 658, quoting Robinette v. State, 531 So.2d 682, 686 (Ala.Crim.App.1987), rev’d on other grounds, 531 So.2d 697 (Ala.1988).
“In Temple v. State, 366 So.2d 740 (Ala.Crim.App.1978), this court provided a nonexclusive list of circumstances that may establish a connection between a defendant and the contraband found on the defendant’s property when the defendant is not in exclusive possession of the premises.
“ ‘While the kinds of circumstances which may provide a connection between a defendant and the contraband are unlimited and will naturally depend on the facts of each particular case, 56 A.L.R.3d 948 (1974), it has generally been stated that:
“ ‘ “The kinds of circumstances which provide such connection are: (1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that an illicit drug will be found; (5) evidence that debris of the contraband was found on the defendant’s person or with his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence.
“ ‘ “The kinds of evidence which might be relevant, but which by themselves do not add the necessary connection are: (1) admissions of previous use; (2) conduct that might be construed as evidencing a consciousness of guilt which was not displayed upon the defendant’s confrontation of the possibility that an illicit drug would be discovered; (3) evidence of previous use; (4) evidence that showed the defendant’s physical proximity to the contraband.”
“ ‘9 Land and Water L.Rev. 236, 248-49 (1974).’
“366 So.2d at 743.”
*1233 Posey, 736 So.2d at 658-59. See also Goodloe v. State, 783 So.2d 931 (Ala.Crim.App.2000).
In this case, there was no evidence connecting the appellant to the testosterone eypionate. The State presented no evidence tending to exclude other possible possessors (specifically, the appellant’s father), no evidence that any contraband was found on the appellant’s person, no evidence that the appellant had substantial control over the particular place where the contraband was found, no evidence of admissions by the appellant, no evidence that the appellant had engaged in conduct , that would suggest a consciousness of guilt when the contraband was found, and no evidence suggesting that the appellant had ever used testosterone eypionate. Although the testosterone eypionate was found in the upstairs bathroom, a bathroom located next to the appellant’s bedroom and to which the appellant clearly had access, there was no evidence that any of the appellant’s belongings were found in the bathroom. The contraband was found under the sink in a box, along with other narcotics, and the evidence was undisputed that numerous narcotics were found in the bedroom of the appellant’s father and that the appellant’s father often took narcotics from his pharmacy, including halotestin, a type of testosterone. The evidence was undisputed that the appellant’s father spent time in the upstairs portion of the residence and that he used the upstairs bathroom. Although it appears from the record that the trial court considered the presence of weightlifting equipment in' the appellant’s bedroom to be evidence linking him to the testosterone eypionate — which is often used to enhance muscle mass — the mere fact that the appellant lifts weights does not raise an inference that the appellant injects himself with, testosterone. ' In short, the only evidence presented by the State to link the appellant to the testosterone eypionate was his proximity to the contraband. In fact, the prosecutor admitted as much to the trial court when he argued to the court that the mere presence of the appellant in the residence with the contraband created “an inference ... that he had knowledge of it.” (R. 99.) However, as noted above, “where a person is in possession, but not exclusive possession of premises, it may not be inferred that he knew of the presence of any controlled substances found there unless there are other circumstances tending to buttress this, inference.” Temple v. State, 366 So.2d 740, 743 (Ala.Crim.App.1978).
This court is well aware of the applicable standard of review concerning the sufficiency of the evidence. “In order to sustain-a conviction based on circumstantial evidence, this Court must consider the evidence in a light most favorable to the State and determine “whether the [factfinder] might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt.’ ” Goodloe, 783 So.2d at 935, quoting Cumbo v. State, 368 So.2d 871, 874 (Ala.Crim.App.1978), cert. denied, 368 So.2d 877 (Ala.1979).
“However, circumstantial evidence justifies a conviction only when it is inconsistent with any reasonable theory of innocence.
“ ‘The humane provisions of the law are, that a prisoner, charged with a felony, should not be convicted on circumstantial evidence,, unless it shows by a full measure of proof that the defendant- is guilty. ■ Such proof is always insufficient, unless it excludes, to a moral certainty, every other reasonable hypothesis, but that of the guilt of the accused. No matter how strong the circumstances, if they can be reconciled with the theory that some other person may have done the *1234 act, then the defendant is not shown to be guilty, by that full measure of proof that the law requires.’ Ex parte Aeree, 63 Ala. 234 (1879).”
Cumbo, 368 So.2d at 875.
Viewing the evidence in the light most favorable to the State, we conclude that the State, failed to prove beyond a reasonable doubt that the appellant had knowledge of the presence of the testosterone cypionate in the residence. Although the State proved that the appellant lived on the premises and that he had access to the contraband, under the facts of this case, this alone was not sufficient to support the appellant’s conviction.
Accordingly, the judgment of the trial court is due to be reversed and a judgment rendered in favor of the appellant.
REVERSED AND JUDGMENT RENDERED.
McMILLAN, COBB, BASCHAB, and FRY, JJ., concur.