COBB, Judge,
dissenting.
I believe the majority in its unpublished memorandum has erroneously determined that Alfred Allen was in constructive possession of the marijuana found in the residence. The police obtained and executed the warrant, searching, not for marijuana, but for cocaine, which they suspected Allen was selling. At trial, none of the evidence tended to establish that Allen had control of, or intended to exert control over, the marijuana found in the residence as a result of the search. None of the evidence tended to show: 1) when the marijuana was brought into the residence; 2) whether Allen had knowledge of the presence of *376 the marijuana; or 3) whether Allen had been present while the marijuana was there or at any time after the marijuana was brought into the residence. To the contrary, all four of the officers who testified stated that: 1) they had no knowledge as to who smoked the marijuana-filled blunts; or 2) they never saw Allen with the blunts. Although four officers testified that each had seen Allen in the front yard in the weeks leading up to the search, one as recently as two or three days before the search warrant was executed, none of them testified that they had ever seen Allen actually enter the residence. This despite the fact that the officers conducted a lengthy surveillance of the property, with one officer testifying that he had observed Allen in the front yard more than 5 but fewer than 25 times.
Upon execution of the search warrant, the officers discovered two appearance bonds in Allen’s name in the front bedroom of the residence. Those appearance bonds, along with some 45-caliber bullets and men’s clothing, were the only items discovered in the bedroom the prosecution contended was Allen’s bedroom. However, there was no evidence that Allen had ever owned, or was ever found to be in possession of, a 45-caliber firearm. The officer who testified about the men’s clothing testified that he could not remember the size of the clothing, nor was there any testimony that Allen claimed ownership of any of the items discovered in the residence. No drugs or residue were discovered in the front bedroom where the appearance bonds, bullets, and men’s clothing were found.
Additionally, the officers’ testimony revealed that one piece of crack cocaine was found in the bedroom believed to be occupied by a different person, John Walker, that the blunts and the marijuana residue were discovered in different rooms on the other side of the residence, and that there were no drugs or residue discovered in the bedroom believed to be occupied by Allen. Compare with Linville v. State, 634 So.2d 601 (Ala.Crim.App.1993)(the State presented sufficient evidence indicating that the appellant was aware of the presence of marijuana where the evidence showed that a substantial amount of the marijuana was discovered in plain view in the bedroom occupied by the appellant and a witness testified that the appellant sold marijuana from the residence the night before the search). No evidence was presented connecting Allen to any room of the residence except the front bedroom, where no drugs were discovered. Though some of the blunts and residue were discovered in plain view, Allen was not present when the contraband was discovered. Compare with Lewis v. State, 741 So.2d 452 (Ala.Crim.App.1999)(evidence showing that a pistol was lying on the seat in an automobile, in plain view, within three inches of the appellant’s leg was sufficient to allow the jury to infer that the appellant had knowledge of, and was in constructive possession of, the pistol).
In White v. State, 611 So.2d 439 (Ala.Crim.App.1992), the police, after receiving information that the appellant was selling drugs from his blind half brother’s apartment, obtained a search warrant and executed the warrant. White, his wife, and the half brother were present when the police executed the warrant, and White’s wife told one of the officers that she and White had been staying at the apartment for some time. The police found marijuana in the half brother’s bedroom and in a toolbox in a closet. They also found 62 tablets of dihydrocodeinone in the kitchen. White admitted that a tape measure and a tool pouch found in the toolbox were his. This Court held that none of the State’s circumstantial evidence gave rise to any *377 finding that White was aware that the contraband was present.
In R.W. v. State, 808 So.2d 1228 (Ala.Crim.App.2001), this Court unanimously held that the evidence was insufficient to establish constructive possession of the contraband. In R.W., the controlled substances were found in a box in an upstairs bathroom, along with several other prescription or controlled narcotics. Testimony showed that the upstairs portion of the house consisted of R.W.’s bedroom, a sitting area, another small room containing a bed, and the bathroom where the controlled substance and other narcotics were found. One of the drugs was commonly used to enhance muscle mass, and weightlifting equipment was found in R.W.’s bedroom. R.W.’s bedroom was connected to the bathroom by a door. R.W.’s father occupied the downstairs portion of the residence, where other controlled substances were discovered. This Court held that the fact that R.W. lived at the residence and had access to the controlled substance was insufficient to prove that R.W. was in constructive possession of the controlled substances. Specifically, this Court noted that there was no evidence that tended to exclude other possible possessors. This Court also noted that, although R.W. was present when the search warrant was executed, there was no evidence indicating that any of his possessions were found in the bathroom adjacent to his bedroom.
In Goodloe v. State, 783 So.2d 931 (Ala.Crim.App.2000), Goodloe and five other adults were present when the police executed a search warrant. Marijuana was found in a suitcase in a storage room or guest bedroom. Cocaine, drug paraphernalia, and more marijuana was found in the den, but one of the other individuals present admitted ownership of those drugs and paraphernalia. This Court held that the evidence did not tend to connect Good-loe to the controlled substances found in the suitcase. Specifically, the evidence did not exclude the five other individuals present as possible possessors, and no evidence connected Goodloe to the room where the suitcase full-of marijuana was found.
In Meeker v. State, 801 So.2d 850 (Ala.Crim.App.2001), marijuana was discovered on a TV stand in a spare bedroom of a house owned by Meeker’s brother. The police observed the residence on two occasions, and observed Meeker on the front porch once, and saw him enter the residence on the other occasion, presumably to spend the night based on the officers’ observations. When the police executed the warrant, Meeker was not present, but the police found his driver’s license on the TV stand in the guest bedroom where the marijuana was found. This Court, with Judge Shaw and Judge Wise dissenting, found that the evidence was insufficient to support Meeker’s conviction for possession of marijuana.
Here, none of the State’s witnesses testified as to when the appearance bonds were actually brought into the residence or by whom. There was no testimony that Allen owned or had ever been in possession of a .45-caliber gun, no testimony that the men’s clothing discovered in either bedroom belonged to Allen, and no testimony that Allen knew the marijuana was present or that he exerted or intended to exert control over the marijuana. Officer Co-field testified that he had no knowledge who smoked the blunts; Officer • Melton testified that he never saw Allen with the blunts, that he had no knowledge of who had smoked the blunts, and that he did not know if Allen knew the blunts were in the residence; Officer Maye testified that he had no knowledge of who had smoked the blunts; and Officer Bailey testified that he never saw Allen with the blunts,.-that he had no knowledge that Allen brought the blunts into the residence, or that Allen *378 even knew the blunts were in the residence. •
Additionally, the presence of items belonging to John Walker tended to demonstrate that control of the residencé by Allen, if he had any control, was not exclusive. There was no- evidence presented that tended to exclude all other possible possessors. To the contrary, as the majority cites in its unpublished memorandum, one of the officers testified that “there had been a good bit of traffic into this residence.” (R. 66.)
Looking at the nonexclusive list of circumstances that may establish a connection between the defendant and the contraband, as discussed in Posey v. State, 736 So .2d 656, 658-59 (Ala.Crim.App.1997) (quoting Temple v. State, 366 So.2d 740 (Ala.Crim.App.1978)), the evidence here: 1) did not exclude all other possible possessors but rather established that there was a significant number of other possible possessors; 2) clearly did not show actual possession; 3) did not establish that Alien had substantial control over, or that he had ever' even been in, the areas where the blunts were found; 4) did not show admissions by Allen that established any connection to the blunts or showed any consciousness of guilt; 5) did not show any marijuana debris on Allen’s person or with his personal effects; and 6) did not show that Allen had used marijuana shortly before or at the time of his arrest. The fact that Allen had a previous conviction for second-degree possession of marijuana is certainly relevant. However, without some other link between Allen and the marijuana-filled blunts found in the back rooms of the residence, that fact alone is insufficient to connect Allen to the marijuana.
In this case,- the prosecution simply failéd to introduce any evidence or testimony that tended to link Allen to the marijuana-filled blunts found in the residence. At best, all that the evidence did tend to establish was 1) that Allen was seen outside of the residence, believed to be selling crack cocaine; 2) that numerous people, but not Allen himself, were seen entering the residence; 3) that at some point after the issuance of the appearance bonds on October 20, 2000, but before the execution of the search warrant on December 4, 2000, either Allen, or someone other than Allen, placed the appearance bonds in the front bedroom of the residence, at the other end of the house from where the blunts were discovered; and 4) that at some unknown point in time before the execution of the search warrant, the blunts were brought into the residence by a person unseen by, and unknown to, the police. Even assuming that Allen did live in and enjoy nonexclusive control of the residence, there is no evidence indicating that he was aware of the presence of the marijuana, and no evidence tending to exclude Walker, or any of the numerous other people that made up the “great deal of traffic into this residence” (R. 66.), as possible possessors of the contraband.
Though I have a strong disdain for the unlawful use or sale of illegal drugs or controlled substances, the prosecution still must meet certain burdens of proof, burdens of proof that simply were not met in this case. Because the evidence did not tend to establish that Allen possessed or intended to possess the marijuana, that he knew the marijuana was present, or that the marijuana was in fact present when, if ever, Allen was actually present inside of the residence, nor did the evidence tend to exclude other possible possessors, the prosecution failed to establish that Allen constructively possessed the marijuana.
Therefore, I dissent.