McMILLAN, Judge.
This appeal follows a conviction for the offense of possession of marijuana, in vio *704 lation of § 20-2-70, Code of Alabama (1975), and sentence of seven years’ imprisonment. For the reasons outlined below, the judgment of conviction is reversed and judgment rendered for the defendant. Even though several issues are raised on appeal, we will restrict our analysis to the issue concerning the sufficiency of the evidence.
Paul Mays, an agent with the Alabama Alcohol Beverage Control Board, testified that in June of 1981, he was assisting Sheriff Floyd Long in an investigation of a “drug case” in Marion County. Mays stated that on June 25, 1981, he went with Sheriff Long and Deputy Max Brasher to a place near Highway 278. Mays stated that he, along with Sheriff Long and Deputy Brasher, were dropped off near the highway and walked approximately 300 yards to an area near a trailer. There were several trails which led from the trailer to a field.
Mays testified that they waited near the trailer for about an hour but that, during this time, no one came to the trailer. According to Mays, he found an oil can in some bushes near the edge of the field and showed it to Sheriff Long. Mays testified that inside the oil can there were several hundred “little round seeds,” and some “dried leaves crumbled up.” Mays testified that, based on his training and experience, he concluded that the seeds and dried leafy material were marijuana.
Mays explained that he and the other men continued to observe the trailer for another hour and then they “kind of split up.” Mays stated that he followed a trail, which began approximately 60 feet away from the trailer, and found an army ammunition (or “ammo”) box. Inside the ammo box, according to Mays, were two plastic bags. One of the bags was a plastic “freezer” bag which contained approximately two thousand white pills or tablets. There was also a large black garbage bag which was approximately half full of brown leafy material. Mays testified that the oil can and the ammunition box, along with their contents, were taken into custody by Sheriff Long.
On cross-examination, Mays testified that the oil can was located approximately 75 yards from the trailer and the ammunition box was discovered approximately 150 yards from the trailer. Mays also described the size of the field behind the trailer as approximately two and one-half acres. Mays admitted that there was no identification found on the ammunition box and also admitted that neither he nor Sheriff Long was wearing gloves when they handled the ammunition box.
Floyd Long, Sheriff, Marion County, testified that on June 25, 1981, he, along with Max Brasher and Paul Mays, went to observe activity near a trailer which was located approximately eight or nine miles east of Hamilton. After Agent Mays discovered the oil can, according to Sheriff Long’s testimony, they discovered the trails which began near the trailer. Sheriff Long testified that a metal ammunition box, containing marijuana and some white pills, was found near the trailer. Sheriff Long stated that he found approximately 2000 white pills inside the ammunition box, along with a pill bottle which contained four purple pills. According to Sheriff Long, they also discovered a large plastic garbage bag that had brown leafy material inside. Sheriff Long explained that samples were sent to the lab to be analyzed.
Sheriff Long testified that the next day he returned to the trailer with a search warrant. According to Sheriff Long’s testimony, inside the trailer he found some scales and some more pills. Sheriff Long also testified that he found some papers and bills with the appellant’s name on them inside the trailer. According to Sheriff Long, he returned to the trailer several times after the search in an attempt to locate the trailer’s occupant. Sheriff Long also stated that he instructed his deputies to routinely check the trailer, especially late at night, and locate the occupant. After a diligent search of the surrounding counties, the appellant was located in Mississippi, according to Sheriff Long.
*705 Sheriff Long testified that, based upon what he had been told, he “assumed” that the appellant lived at the trailer. Sheriff Long admitted, however, that he never saw the appellant at the trailer and also admitted that he had been told that someone besides the appellant was living at the trailer at the time.[1]
Lewis D. Harris, serviceman with the Tombigbee Electric Cooperative, testified that he installed a meter at the trailer site in question in the appellant’s name in June of 1981. Harris testified that he talked with a man at the trailer who identified himself as “Danny Wooldridge” but Harris did not identify the appellant as that person.
Joseph Gary Wallace, criminalist, Alabama Department of Forensic Sciences, testified that he received a manila envelope from Sheriff Long which contained certain material for testing. According to Wallace’s testimony, he tested the materials for controlled substances and determined the presence of four different controlled substances. Wallace stated that his tests revealed the presence of marijuana; butyl-vinyl, a barbituate; lysergic acid diethyla-mide, or “LSD”; and methaqualone, or “quaalude.”
I
The appellant argues that his conviction should be reversed and judgment rendered for him due to the State’s failure to present sufficient evidence to support the conviction. In his brief, the appellant has summarized the evidence presented by the State as follows:
“1. Paul Mays [of the Alabama Alcohol Beverage Control Board] found in a paper bag an oil can that contained some seeds, and the discovery was made one hundred and fifty (150) yards from the trailer.
“2. About twenty (20) steps from the trailer there was a trail that forked in different ways after it hit the woods.
“3. The marijuana was found about one hundred and fifty (150) yards down the trail from the trailer.
“4. The ammunition box was hidden under some bushes.
“5. There was nothing on the box that identified the owner of the box.
“6. There were no identifying marks on the box at all.
“7. The end of these trails just played out down in the woods.
“8. One main trail went back to the edge of the yard by the trailer and ended about sixty (60) feet from the trailer.
“9. Papers and bills were found in the trailer with Danny Wooldridge’s name on them.
“10. Officers returned to the trailer half a dozen times or more to look for Danny Wooldridge after the search on June 26.
“11. No person was ever found at the trailer location on any of the times that persons returned to it looking for Danny Wooldridge.
“12. Sheriff Long asked all of his deputies to go by the trailer, especially late at night, to look for Danny Wool-dridge.
“13. Sheriff Long searched for Danny Wooldridge in Marion County and in surrounding counties.
“14. Danny Wooldridge was located in Mississippi.
“15. Danny Wooldridge was not present on the 24th when the objects were found in the woods.
“16. Danny Wooldridge was not present on June 25 when the deputies walked around the field.
“17. Danny Wooldridge was not at the trailer on June 26.
“18. On no occasion was Danny Wool-dridge found at the trailer.
“19. Sheriff Long did not communicate with Danny Wooldridge at all.
*706 “20. None of the other officers communicated with Danny Wooldridge.
“21. Sheriff Long did not know if Danny Wooldridge had ever lived at the trailer.
“22. Sheriff Long knew that there had been other people occupying the trailer besides Danny Wooldridge.
“23. The trial court specifically instructed the jury that they could not consider any evidence as to whether or not the defendant lived at the trailer that had been offered by the State based upon reputation.
“24. Some papers and bills were found in the trailer with Danny Wool-dridge’s name on them.
“25. Louis Harris, a service man for Tombigbee Electric Cooperative removed or installed a power meter three times at the trailer’s location.
“26. [According to Harris], the power bill was paid in the name of Danny Wool-dridge.
“27. [Harris] thinks that he removed or installed a meter just prior to June of 1981 in Danny Wooldridge’s name.”
The appellant argues that the State’s evidence was insufficient because the State failed to prove that he owned the trailer or the property where the trailer was located. In fact, according to the appellant, the State did not even prove that he was present at the trailer or the nearby premises at any time. Thus, according to the appellant, the State did not prove that he had actual or constructive possession of the controlled substances.
The State argues that it was “firmly established” that the appellant was in control of the premises, based upon the testimony of Harris (the power cooperative representative), and the fact that “papers and bills” with the appellant’s name on them were found inside the trailer. The State then concludes that “based on appellant’s possession of the trailer, the items found inside the trailer, and the discovery of the drugs on appellant’s property, constructive possession was shown.”
Contrary to the State’s position, however, it is not apparent to this court that the mere fact that papers and bills in the name of the appellant, coupled with Harris’s testimony, established that the appellant had “constructive possession” of the contraband.[2] In order for the State to prove its case, the following proof was necessary.
“The three elements which are necessary to prove possession of [a controlled substance] are ... ‘(1) actual or potential physical control, (2) intention to exercise dominion and (3) external manifestations of intent and control.’ [Citations omitted.]
“In addition to these three elements, the State must also prove that the ac *707 cused had knowledge of the presence of [the contraband]. [Citations omitted.]
“In German v. State, 429 So.2d 1138 (Ala.Cr.App.1982), this court held:
“ ‘Proximity to illegal drugs, presence on the property where they are located, or mere association with persons who do control the drugs may be sufficient to support a finding of possession when accompanied with testimony connecting the accused with the incriminating circumstances.’ [Citations omitted.] ” (Emphasis in original.)
White v. State, 479 So.2d 1368, 1376 (Ala.Cr.App.1985).
In the case sub judice, the only evidence which connected the appellant to the illegal contraband was (1) the testimony from Harris which identified the appellant’s name as the person who had established an account for power at the trailer; and (2) the fact that some unidentified bills and “correspondence” in the appellant’s name were found at the trailer. There was no testimony that the appellant was ever observed at the trailer and there was no testimony from neighbors which would tend to establish the trailer as the appellant’s residence. The State did not prove its case; instead, the evidence presented by the State “merely raised a suspicion that the appellant knew of the presence of marijuana.” Hunter v. State, 469 So.2d 681, 683 (Ala.Cr.App.1985).[3]
The State failed to prove that the appellant was connected to the trailer, its contents, or the surrounding open areas. Sheriff Long admitted that he never saw the appellant at the trailer and, even after his deputies were instructed to look for the appellant, he was never located at or near the trailer. Other than the testimony from the power cooperative representative, the sole link between the appellant and the premises was the discovery of some bills and correspondence in the appellant’s name at the trailer. This evidence was insufficient to establish that the appellant was in constructive possession of the contraband.
Additionally, even assuming that the appellant was living at the trailer, Sheriff Long testified that, at the time of the search, he was not living there alone. “Where drugs are found on premises of which the defendant was in nonexclusive possession, the fact that they were found among or near his personal belongings may be a circumstance which is sufficient to link him with the possession of those drugs.” Gary v. State, 473 So.2d 604, 606 (Ala.Cr.App.1985). In the present case, however, the State did not prove that the contraband was found “among or near” anything which belonged to the appellant.
We are inclined to agree with the appellant that the facts of this case are similar to those in Crafts v. State, 439 So.2d 1323 (Ala.Cr.App.1983). In Crafts, the appellant’s conviction for the offense of unlawful possession of marijuana was reversed based on the insufficiency of the State’s evidence. In reaching this conclusion, this court noted that the State’s evidence was “notable for its lack of detail and for the absence of information connecting the defendant with the growing marijuana.” Id. at 1324. This court in Crafts stated that “[r]educed to fundamentals, all the State showed was that the defendant’s residence abutted land on which marijuana was *708 growing.” Id at 1325. Here, the State’s ease was even weaker than that presented in Crafts. Thus, the appellant’s conviction must be reversed and judgment rendered for the defendant.
REVERSED AND JUDGMENT RENDERED.
All the Judges concur.

. After defense counsel made an objection, the trial court instructed the jury that Sheriff Long’s testimony to the effect that he had been told that the appellant lived at the trailer could not be considered competent evidence because it was hearsay.

. This case is distinguishable from the case of Howard v. State, 479 So.2d 1321 (Ala.Cr.App.1985), where an element of the appellant’s control of the premises included the fact that the appellant’s phone bill was discovered at the apartment, along with the contraband. In upholding the appellant’s conviction for the possession of cocaine, based upon circumstantial evidence, this court, per the Honorable Leigh M. Clark, Retired Circuit Judge, in Howard v. State, supra, at 1328, stated as follows:
‘"Where, as in this case, actual possession of the contraband is not shown, and constructive possession is relied upon, the State must show beyond a reasonable doubt, in addition to constructive possession, that the accused knew of the presence of the contraband. [Citations omitted.] Where the accused is not in exclusive possession, this knowledge may not be inferred without other evidence that connects defendant to the contraband.
“‘Where physical proximity to the contraband is relevant, this evidence alone does not “add the necessary connection" between appellant and the contraband to show that appellant had knowledge of the presence of controlled substances. [Citation omitted.] But evidence of substantial control over the premises, such as the phone bill in appellant's name, along with both verbal admissions and appellant’s conduct when she met the police officers at the door, will sufficiently connect appellant with the contraband to show constructive possession.
“ ‘The circumstances as a whole were sufficient to convince the jury that appellant was more than a mere visitor on the premises, and that she, either singly, or jointly, with the other occupant, had constructive possession of the contraband. [Citation omitted.]’ ” quoting Smith v. State, 457 So.2d 997, 999-1000 (Ala.Cr.App.1984).

. In Hunter v. State, 469 So.2d 681 (Ala.Cr.App.1985), the appellant’s conviction for the offense of possession of marijuana was reversed and a judgment rendered for the defendant. The marijuana in question in Hunter was found in the dresser drawer in the bedroom where the appellant was found sleeping with a female companion. When the appellant was arrested, he gave the address of the apartment as his address but testimony presented at trial revealed that the apartment was rented by Brenda Woodrow, the appellant’s brother’s girl friend. The State argued that the appellant's presence during a drug buy earlier in the morning, when coupled with the fact that an envelope with the appellant’s name on it was found at the apartment, established the appellant's knowledge of the marijuana. This court disagreed with the State’s position and concluded that, instead, a mere "suspicion” had been established. These “suspicious” factors were insufficient to support the conviction in Hunter, especially when the appellant's brother, a "known drug dealer” testified that the marijuana in question belonged to him. For these reasons, Hunter's conviction was reversed and judgment rendered.