On June 29, 2000, Christopher Meeker was convicted of possession of marijuana in the first degree, a violation of § 13A-12-213, Ala. Code 1975. Meeker was sentenced to 10 years' imprisonment; that sentence was split and he was ordered to serve 2 years. The balance of the sentence was suspended, and he was placed on 3 years' probation. Meeker raises five issues on appeal. Because of our holding, however, we address only one of those issues.
At trial, the State argued that Meeker was in constructive possession of 1.1 ounces of marijuana. Meeker alleges on appeal, as he did at trial, that the State failed to prove that he was in constructive possession of the marijuana.
The evidence at trial tended to show the following. On October 15, 1998, the narcotics and vice unit of the Madison County Sheriff's Department executed a search warrant on the home of Kevin Meeker, Christopher Meeker's brother. The house is actually owned by a relative of the Meekers. Kevin Meeker and Matthew Maples reside there permanently. The search warrant was obtained after an investigation involving Kevin and after the residence had been under surveillance. The surveillance took place on seven separate occasions during the week and a half before the execution of the warrant. Christopher Meeker was seen at the house on two of those seven occasions. *Page 852 
During one surveillance, Christopher was seen on the porch of the residence smoking a cigarette. On the second surveillance, the authorities saw Christopher drive up to the garage of the house in a vehicle. Kevin parked a vehicle directly behind him. Both men talked outside and then walked into the house. The police ceased surveillance of the residence at 3:00 a.m. or 4:00 a.m., but they did not see Christopher leave the residence. Later that morning, the police drove back to the residence, and the vehicle Christopher had driven was parked in the same location as it had been when the officers left earlier that morning.
On October 15, 1998, after they had watched the house on two occasions, the officers executed the search warrant. On that day, Officer Jay King had conducted surveillance at 5:00 p.m., for approximately 45 minutes. King later returned in the evening and stayed for an hour. The officers executed the warrant at 10:30 p.m. When they knocked on the door of the house, Kevin refused to answer, and the officers forcibly entered the residence. Kevin escaped out the back door, but was apprehended and brought back inside the residence. During the initial search of the residence, the officers found cocaine in the garage. In a spare bedroom, they saw a mattress on the floor, and a stand with a TV, beer steins, and watches on it. Clothes and shoes were in the closet in this bedroom.[1]
They also found five small plastic bags of marijuana on the TV stand. Christopher Meeker's driver's license was also found on the TV stand, but it was on a different shelf than the marijuana.
On the night the residence was searched, Christopher Meeker was not at the residence, and he was not arrested until after the grand jury indicted him on this offense. At trial, the State never established that Christopher resided at the house or that he owned or used any of the items in the residence, except the driver's license.
The State pursued a conviction against Christopher on the basis of constructive possession. In support of this theory, the State presented evidence tending to show that Meeker had visited the residence on at least two occasions. At the close of the State's evidence, Meeker made a motion for a judgment of acquittal, alleging that the State had failed to prove that he was in constructive possession of the marijuana because, he argued, it had failed to prove that he exercised control over the marijuana or that he had knowledge of the presence of the marijuana. Meeker renewed the motion at the close of the defense's case. The trial court denied the motions. Meeker now argues that the trial court committed reversible error when it denied the motions. We agree.
 "`In reviewing a conviction based on circumstantial evidence, this Court must view that evidence in a light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir. 1974); United States v. McGlamory, 441 F.2d 130 (5th Cir. 1971); Clark v. United States, 293 F.2d 445 (5th Cir. 1961).
 "`"[W]e must keep in mind that the test to be applied is not simply whether *Page 853 
in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir. 1969); Roberts v. United States, 416 F.2d 1216 (5th Cir. 1969). The procedure for appellate review of the sufficiency of the evidence has been aptly set out in Odom v. United States, 377 F.2d 853, 855 (5th Cir. 1967):
 "`"`Our obligation, therefore, is to examine the record to determine whether there is any theory of the evidence from which the jury might have excluded every hypothesis except guilty beyond a reasonable doubt. Rua v. United States, 5 Cir., 1963, 321 F.2d 140 140; Riggs v. United States, 5 Cir., 1960, 280 F.2d 949. . . .
"`"`. . . .
 "`"The sanctity of the jury function demands that this court never substitute its decision for that of the jury. Our obligation is to so examine the welter of evidence to determine if there exists any reasonable theory from which the jury might have concluded that the defendant was guilty of the crime charged." McGlamory, 441 F.2d at 135 and 136.
 "`See also Blair v. State, 18 Ala. App. 615, 93 So. 45
(1922). Whether circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of guilt is a question for the jury and not the court. Cannon v. State, 17 Ala. App. 82, 81 So. 860
(1919); see also Evans v. State, 39 Ala. App. 404, 408, 103 So.2d 40, cert. denied, 267 Ala. 695, 103 So.2d 44 (1958).'"
Posey v. State, 736 So.2d 656, 659 (Ala.Crim.App. 1997).
A person is guilty of first-degree possession of marijuana, if he or she: (1) possesses marijuana for other than personal use, or (2) possesses marijuana for personal use only after having been previously convicted of unlawful possession of marijuana in the second degree or unlawful possession of marijuana for personal use only. § 13A-12-213, Ala. Code 1975.
"In order to sustain a conviction for possession of controlled substances, there must be sufficient evidence of either actual or constructive possession. Radke v. State, 52 Ala. App. 397, 293 So.2d 312
(1973), affirmed, 293 So.2d 314 (Ala. 1974)." Menefee v. State,592 So.2d 642, 644 (Ala.Crim.App. 1991). It is undisputed that Meeker was not in actual possession of the marijuana found in the residence. Therefore, the State had to prove that he was in constructive possession of the contraband.
 "`When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances. Campbell v. State, [439 So.2d 718
(Ala.Cr.App.), rev'd on other grounds, 439 So.2d 723
(Ala. 1983)]; Yarbrough v. State, 405 So.2d 721
(Ala.Cr.App.), cert. denied, 405 So.2d [725 (Ala. 1981)]. This knowledge may be inferred from the accused's exclusive possession, ownership, and control of the premises. Temple v. State, 366 So.2d 740
(Ala.Cr.App. 1978). When the accused is not in exclusive possession of the premises, however, this knowledge may not be inferred unless there are other circumstances tending to buttress this inference. Korreckt v. State, 507 So.2d 558 (Ala.Cr.App. 1986); Temple v. State, *Page 854 
[366 So.2d at 743]. While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Grubbs v. State, 462 So.2d 995
(Ala.Cr.App. 1984); Temple v. State."
 "Robinette v. State, 531 So.2d 682, 686 (Ala.Cr.App. 1987), rev'd on other grounds, 531 So.2d 697 (Ala. 1988).
". . . .
 "In Temple v. State, 366 So.2d 740 (Ala.Cr.App. 1978), this court provided a non-exclusive list of circumstances that may establish a connection between a defendant and the contraband found on the defendant's property when the defendant is not in exclusive possession of the premises.
"`. . . .
 "`"The kinds of circumstances which provide such connection are: (1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that an illicit drug will be found; (5) evidence that debris of the contraband was found on the defendant's person or with his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence.
 "`"The kinds of evidence which might be relevant, but which by themselves do not add the necessary connection are: (1) admissions of previous use; (2) conduct that might be construed as evidencing a consciousness of guilt which was not displayed upon the defendant's confrontation of the possibility that an illicit drug would be discovered; (3) evidence of previous use; (4) evidence that showed the defendant's physical proximity to the contraband."'"
Posey v. State, 736 So.2d at 658-59.
There was no evidence presented at trial indicating that Christopher was in exclusive possession of the house or that he was even a resident of the house. The State presented evidence indicating only that Christopher had visited the house on two occasions.
The only evidence the State presented linking Christopher Meeker to the marijuana found in his brother's residence was the fact that he had visited the residence on two occasions and that his driver's license was found in a spare bedroom. One can infer from the State's evidence only that Christopher spent the night at the residence on one occasion. Meeker's driver's license was found on a TV stand in the residence, but there was no evidence indicating when or how the license came to be in the room, whether the seized marijuana was in the room at the time the license was placed there, or whether Christopher had any knowledge that drugs were present in the residence on October 15, 1998, the night the residence was searched.
In this case, there was no evidence of any of the factors enumerated above, which might have established a connection between Christopher and the marijuana. The State simply presented evidence tending to show that Meeker had visited his *Page 855 
brother's residence on two occasions and that his driver's license was in the spare room of the residence. We find this evidence insufficient to prove that Meeker had any rights of possession in the residence or that he had knowledge of the presence of the marijuana confiscated on the night of the search.
In Goodloe v. State, 783 So.2d 931 (Ala.Crim.App. 2000), we reversed convictions for trafficking in marijuana and unlawful possession of drug paraphernalia under similar circumstances. In that case, we stated:
 "[N]one of the evidence presented connected Goodloe with the marijuana. Officer Bogran testified that it appeared that no one lived in the guest bedroom where the suitcase containing the marijuana was found. No testimony was presented linking Goodloe to the bedroom. No statements were admitted indicating that Goodloe frequented that room. Although testimony indicated that dirty clothes were found in the room, the testimony did not indicate that those clothes belonged to Goodloe. Nothing in the record indicates that any of Goodloe's possessions were in that bedroom. No fingerprint evidence was admitted to connect Goodloe with the room, much less the suitcase. . . . The evidence presented simply does not connect Goodloe to the marijuana.
". . . .
 "`"To permit a conviction of this character to stand upon such testimony would be unconscionable. It would be exceedingly dangerous precedent to hold that the mere finding of prohibited liquor in the home of a citizen, with nothing to connect the accused therewith, and nothing to indicate or to impute any knowledge of the fact to him, is sufficient to deprive him of his liberty and brand him as a criminal before the world. If such were the law, every citizen would be at the mercy of an enemy who by merely surreptitiously placing the inhibited article in the home of his enemy could wreak his vengeance through the aid of the law in this dastardly manner. The law contemplates no such condition, nor will the courts countenance such a thing. The law in its wisdom provides that every person charged with crime is presumed to be innocent, and this presumption is not an empty or meaningless provision; to the contrary, it is regarded as evidence in behalf of the accused, and attends him as such throughout the trial, or until the presumption is overcome by legal evidence which shows his guilt beyond all reasonable doubt and to a moral certainty. Conjectures, suspicions, hatred, prejudices, conclusions, and guesswork have no place in the proper administration of the law; and to willfully hold otherwise would do violence to the conscience and integrity of the person so doing, be he judge, juror, officer, or witness."'"
Id. at 935.
In this case, the State presented even less evidence to connect Christopher Meeker to the marijuana found in the spare bedroom of his brother's residence than was presented in Goodloe. Goodloe was standing on the porch barbecuing when the police arrived to execute the search on the house. In contrast, Meeker was not even in the vicinity of the house when the police in this case conducted the search. See also Wooldridgev. State, 489 So.2d 703 (Ala.Crim.App. 1986). Because the evidence is insufficient to sustain the jury's verdict, the judgment of the trial *Page 856 
court must be reversed and a judgment rendered for the appellant.
Due to our reversal on this issue, we pretermit any discussion of the other issues raised.
REVERSED AND JUDGMENT RENDERED.
McMillan, P.J., and Baschab, J., concur. Shaw, J., dissents, with opinion in which Wise, J., joins.
[1] In our review of the record, we found only one description of the clothing found in the Meeker residence. This occurred during the testimony of Officer Jay King. He stated that there were "clothes" and shoes in the small closet in the bedroom located upstairs.