# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 18-1000 consolidated with 18-1007

**DANIEL NORMAN**

**VERSUS**

**MICHAEL A. SHELTON ENTERPRISE, INC., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 255,532
HONORABLE PATRICIA EVANS KOCH, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

### ULYSSES GENE THIBODEAUX
### CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and John E. Conery, Judges.

**CONERY, J., concurs in part, dissents in part, and assigns reasons.**

**AFFIRMED IN PART, REVERSED
AND REMANDED IN PART.**

**Christopher Jude Roy, Jr.**
**Chris J. Roy, Jr., A Law Corporation**
**P. O. Box 7356**
**Alexandria, LA 71306-0356**
**Telephone: (318) 487-9537**
**COUNSEL FOR:**
> **Plaintiff/Appellant - Daniel Norman**

**Lisa Ann McLachlan**
**Musgrave, McLachlan & Penn, LLC**
**1515 Poydras Street – Suite 2380**
**New Orleans, LA 70112**
**Telephone: (504) 799-4300**
**COUNSEL FOR:**
> **Defendants/Appellees - Simms Transportation, Inc. and Michael A. Shelton Enterprise, Inc.**

**Joshua Joy Dara, Sr.**
**1521 Masters Drive**
**Pineville, LA 71360**
**Telephone:  (318) 442-1975**
**COUNSEL FOR:**
    **Defendants/Appellees - Simms Transportation, Inc. and Michael A. Shelton Enterprise, Inc.**

**Thomas Taylor Townsend**
**P. O. Box 784**
**Natchitoches, LA 71458-0784**
**Telephone:  (318) 238-3612**
**COUNSEL FOR;**
    **Plaintiff/Appellant - Daniel Norman**

**Jeff Landry**
**Attorney General**
**Blake E. Ryland**
**Assistant Attorney General**
**Leisa B. Lawson**
**Assistant Attorney General**
**Louisiana Department of Justice**
**900 Murray Street – Suite B-100B**
**Alexandria, LA 71301**
**Telephone:  (318) 487-5944**
**COUNSEL FOR:**
    **Defendant/Appellee - State of Louisiana, Department of Transportation and Development**

**THIBODEAUX, Chief Judge.**

In these consolidated appeals arising from a motor vehicle accident, Plaintiff, Daniel Norman, challenges the trial court's grant of summary judgment in favor of Defendants, Michael Shelton Enterprise, Inc. and Simms Transportation Systems, Inc. (collectively, "MSE"), as well as the State of Louisiana, through the Department of Transportation and Development ("DOTD"). Mr. Norman sustained severe personal injuries while traveling on the favored highway when his motorcycle collided with a pickup truck driven by Trent Dubois that was attempting to enter the highway from the parking lot of Robbie G's Restaurant. The trial court found that neither MSE, the lessee and operator of Robbie G's Restaurant, nor DOTD owed a duty to Mr. Norman and thus dismissed his claims against them with prejudice.

On appeal, Mr. Norman avers that genuine issues of material fact remain given the evidence demonstrating that Mr. Dubois's view of the highway was allegedly obstructed by a vehicle illegally parked on the state's right-of-way bordering the parking lot of the restaurant. Therefore, he argues that the trial court erred in granting summary judgment when factual questions arise as to whether Defendants were negligent in permitting or, alternatively, failing to prohibit, illegal parking on the state's right-of-way, and whether the resulting sight obstruction was a cause-in-fact of the accident.

After conducting a de novo review of the record, we find that the trial court did not err in granting summary judgment in favor of DOTD. However, we find that genuine issues of material fact remain with respect to whether the actions or inactions on the part of MSE in its operation of Robbie G's caused or

contributed to the alleged sight obstruction at the time of the accident, thereby precluding summary judgment in its favor.

For the reasons set forth below, we affirm the trial court's judgment with respect to DOTD and reverse its grant of summary judgment in favor of MSE and remand for further proceedings consistent with this opinion.

## I.

## ISSUES

We must determine whether the trial court erred in granting summary judgment in favor of Defendants, MSE and DOTD.

## II.

## FACTS AND PROCEDURAL HISTORY

On the evening of April 17, 2015, Mr. Norman was traveling westbound on Jackson Street in Alexandria, Louisiana on his Harley Davidson motorcycle. Jackson Street, or LA Highway 1208-3, is a four-lane highway with two lanes each for eastbound and westbound traffic, with a posted speed limit of 40 miles per hour. At or around the same time, Mr. Dubois, a patron of Robbie G's Restaurant, was attempting to exit the driveway of the restaurant in his Chevrolet pickup truck. Robbie G's is located adjacent to Jackson Street running westbound; the state's right-of-way, measuring approximately seven and a half feet wide, lies between the restaurant's parking lot and the shoulder of the highway.

Mr. Dubois testified that while he initially intended to make a left turn onto Jackson Street to go eastbound, his vision of oncoming traffic was obscured by a white pickup truck parked along the unmarked edge of the parking lot of Robbie G's. Thus, he decided it would be easier to make a right turn onto the

2

highway instead. Once Mr. Dubois pulled out far enough into the driveway to be able to see oncoming traffic past the obstructing vehicle, he began to enter the right lane of the highway when he then noticed the single headlight of Mr. Norman's motorcycle approaching. While he and other witnesses stated that Mr. Norman was attempting to switch from the left lane to the right lane at the time, everything happened so fast that Mr. Dubois recalled that he felt that impact was imminent by the time he saw the motorcycle. Mr. Norman's motorcycle impacted Mr. Dubois's left rear tire, resulting in both vehicles being totaled and Mr. Norman sustaining severe personal injuries. Mr. Dubois testified that he was ticketed by police for failing to yield while exiting a private driveway, but that the charge has since been dismissed.

Mr. Norman asserts that his injuries were proximately caused by the negligence of MSE as the operator of Robbie G's Restaurant,[1] and DOTD as custodian of the right-of-way on which the vehicle allegedly obstructing Mr. Dubois's view was illegally parked. Mr. Norman specifically asserted that Mr. Dubois's view of the highway was obstructed due to MSE's regular and consistent practice of permitting its patrons to illegally park on the state's right-of-way. Additionally, he argued that DOTD had a duty to prohibit such violations from occurring on its right-of-way. In support of his position, Mr. Norman presented testimony of several witnesses indicating that parking in the unstriped, unmanned parking lot of Robbie G's is typically so "horrible" on Friday evenings that patrons are known to "park wherever they can," including the state's right-of-way.

---

[1]We note that Mr. Norman erroneously alleged in his Petition that MSE was the lessor and owner of the premises on which Robbie G's Restaurant exists. The corporate deposition of Ms. Pam Rachal clarified that MSE is in fact the lessee and operator of the premises. Moreover, we note that while Simms Transportation, Inc. operates the restaurant, Michael A. Shelton Enterprises, Inc. owns all of the stock in Simms, and that neither entity owns the restaurant.

Moreover, testimony further indicated that this situation "makes it very hard" to exit the driveway of the restaurant.

Following discovery, MSE and DOTD filed individual Motions for Summary Judgment before the trial court asserting virtually identical arguments.[2] While each argued that it did not owe any duty to Mr. Norman, Defendants relied on witness testimony demonstrating that Mr. Norman appeared to have been speeding and that it was his switching lanes at the time Mr. Dubois pulled out from the driveway that resulted in the accident, rather than any negligence on their part.

At the summary judgment hearing, the trial court granted Defendants' motions after finding that the accident simply occurred between Mr. Norman and Mr. Dubois on the highway, with no duty owed by either DOTD or MSE under the facts. In so ruling, the trial court granted summary judgment in favor of both MSE and DOTD and dismissed Mr. Norman's claims against each of them.

III.

## STANDARD OF REVIEW

An appellate court reviews summary judgments de novo, applying the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342 (La.1991). Under La.Code Civ.P. art. 966, summary judgment is only

---

[2]Defendants heavily relied on a theory of statutory immunity under La.R.S. 9:2798.4 in asserting entitlement to summary judgment, in which they asked the trial court to find them immune from liability after alleging that Mr. Norman was more than twenty-five percent negligent in bringing about his own injuries as a result of operating a motor vehicle while under the influence of a controlled dangerous substance.

Finding an absence of relevant and admissible facts to support Defendants' proposition advanced before the trial court, as discussed below, we decline to address the merits of those arguments pertaining to La.R.S. 9:2798.4.

appropriate if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(A)(3).

The burden of proving entitlement to summary judgment rests with the mover, but if the mover will not bear the burden of proving the issue that is before the court on the motion, he need only demonstrate the absence of factual support for one or more essential elements to the adverse party's claim. La.Code Civ.P. art. 966(D)(1). Thereafter, the burden shifts to the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id*. However, the failure of the non-moving party to set forth evidence of a material factual dispute mandates the granting of the motion. *Babin v. Winn-Dixie Louisiana, Inc.*, 00-78 (La. 6/30/00), 764 So.2d 37.

> A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. . . . A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate.

*Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765-66 (citations omitted).

Although the summary judgment procedure is favored, it is not a substitute for trial on the merits. *S.J. v. Lafayette Par. Sch. Bd.*, 06-2861 (La. 6/29/07), 959 So.2d 884. In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Hines*, 876 So.2d 764. Moreover, factual inferences reasonably drawn from

the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. *Id*.

Where the threshold question in reviewing a trial court's grant of summary judgment is whether a genuine issue of material fact remains, such a determination must be viewed in light of the relevant substantive law. *Romero v. Allstate Ins. Co.*, 08-256 (La.App. 3 Cir. 5/13/09), 11 So.3d 579, *writ denied*, 09-1325 (La. 10/9/09), 18 So.3d 1283.

## IV.

## <u>LAW AND DISCUSSION</u>

On appeal, Mr. Norman asserts the existence of genuine issues of material fact which preclude a granting of summary judgment in favor of Defendants, MSE and DOTD.

At the outset, we note that Mr. Norman has also asked this court to review the admissibility of certain pieces of allegedly incompetent summary judgment evidence submitted by Defendants at the summary judgment hearing in support of their argument for statutory immunity under La.R.S. 9:2798.4. However, we decline to do so. First, while we recognize "the well-settled rule that the district court's oral reasons or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment[,]" the trial court expressly based its decision on its own factual findings that Defendants did not owe a duty to Mr. Norman, rather than the arguments and evidence advanced in support of La.R.S. 9:2798.4.[3] *Bellard v. Am. Cent. Ins. Co.*,

---

[3]Specifically, the trial court remarked:

07-1335, p. 25 (La. 4/18/08), 980 So.2d 654, 671. Moreover, we agree with MSE's assertion on appeal that this court need not consider issues raised during a summary judgment hearing which are not relevant to the matter at hand. Therefore, we hold that the issue of Defendants' entitlement to immunity under La.R.S. 9:2798.4, and all evidence submitted in support thereof, is irrelevant under the facts and circumstances now before us.

Because the sole issue on appeal is whether the trial court erred in dismissing Mr. Norman's claims on summary judgment, we now address the trial court's judgments with respect to DOTD and MSE, respectively.

### Summary Judgment in Favor of DOTD

On appeal, Mr. Norman asserts that the trial court erred in granting summary judgment in favor of DOTD after raising a question as to whether the State was negligent in conducting its routine inspections of Jackson Street. Specifically, he argues that a genuine issue of material fact exists as to whether DOTD had constructive notice of the parking situation, and thus owed a duty to Mr. Norman, since it "failed to timely perform inspections according to policy and failed to perform inspections in the evening which would have revealed the sight obstruction onto the state highway." Beyond the unsupported allegations advanced

---

So I find there is no connection between Robbie G's, the people who lease it, own it, and subdividers of that, nor the Department of Transportation and Development in the resulting accident. DOTD has no obligation in this scenario. DOTD did not create any unreasonable risk to the plaintiff and this scenario is contemplated under our statute, Title 9:2800, and the immunity given by our legislature [under La.R.S. 9:2798.4] when operators test positive very well could be triggered. But I'm finding [the accident] was out in the street. I see this as an accident between Dubois and Norman with no intervening factors or responsibilities of DOTD, Mike Shelton Enterprises, Simms, or . . . DOTD or at Robbie G's[.]

by Mr. Norman, however, we find the record devoid of any factual support sufficiently rebutting DOTD's entitlement to summary judgment.

Louisiana Revised Statutes 9:2800 provides that a public entity of this state is liable under La.Civ.Code art. 2317 for damages caused by the condition of things within its care and custody. While a plaintiff may proceed against DOTD under either La.Civ.Code art. 2315 or 2317, he must nevertheless prove that: (1) the thing that caused the damage was in the care or custody of the public entity; (2) the thing was defective due to a condition that created an unreasonable risk of harm; (3) the public entity had actual or constructive notice of the condition, yet failed to take corrective action within a reasonable period of time; and (4) the defect was a cause in fact of the plaintiff's harm. La.Civ.Code art. 2317; La.R.S. 9:2800; *LeBlanc v. City of Abbeville*, 18-206 (La.App. 3 Cir. 10/17/18), 259 So.3d 372. Notably, the statute limits liability to instances in which "the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so." La.R.S. 9:2800(C). Constructive notice, as defined by the statute, "mean[s] the existence of facts which infer actual knowledge." La.R.S. 9:2800(D).

It is undisputed that the portion of Jackson Street where the accident occurred and its shoulder located adjacent to Robbie G's were in the custody and care of DOTD as a state highway. However, DOTD maintains that there was no defect on the highway or the right-of-way, let alone notice thereof, sufficient to invoke a duty owed to Mr. Norman. This court has long stated that "DOTD has a duty to maintain its highways and shoulders in a reasonably safe condition which does not present an unreasonable risk of harm to the motoring public exercising

8

ordinary care and reasonable prudence." *Cole v. State ex rel. Dept. of Transp. & Dev.*, 99-912, p. 5 (La.App. 3 Cir. 12/22/99), 755 So.2d 315, 321 (citations omitted), *writ denied*, 00-199 (La. 4/7/00), 759 So.2d 766. This duty also extends to shoulders and areas off the shoulders within the right-of-way. *Id.*

In moving for summary judgment, DOTD submitted the deposition testimony and affidavit of its District 8 Maintenance Superintendent, Kerry Lemoine. Mr. Lemoine described his general job duties as riding all the state roads within Rapides Parish to check for defects and hazards in the roadway. Since 2004, Mr. Lemoine has inspected his parish's roadways each weekday between the hours of 6:30 a.m. and 5:00 p.m., traversing the entirety of Jackson Street every two weeks. In all of his thirteen years with DOTD, Mr. Lemoine testified that he has never noticed a defective condition in or around the area of Jackson Street adjacent to Robbie G's. Additionally, the record includes Mr. Lemoine's road inventory sheets which demonstrate that he rode Jackson Street before and after the accident, on April 7, 2015 and April 21, 2015, respectively, and found no defects in the roadway.

With respect to the DOTD's process of reporting defects, Mr. Lemoine testified that if he encounters something unusual or defective in the roadway, he stops, attends to it, and then records it on his road inventory sheets. While he agreed that an object on the right-of-way, such as a vehicle, could present a dangerous situation in obstructing a motorist's view, Mr. Lemoine has never noticed any vehicles parked on the right-of-way in front of Robbie G's while conducting his inspections. Moreover, he testified that DOTD does not regard temporarily parked vehicles as "permanent obstructions" warranting intervention, as demonstrated by the following colloquy:

9

Q: . . . If you had ever seen a vehicle parked in the right-of-way there out in front of Robbie G's, is that something that you would note?

A: No.

Q: And why not?

A: We only note obstructions on the right-of-way if we consider them to be permanent obstructions. And if they're reported, we'll also – we'll also check it out. But Robbie G's is a restaurant[.] . . . They get busy and people park wherever they can, and it's for a period of thirty minutes to an hour and I'm probably not there when they're parking there.

. . . .

Q: So if there had been a permanent obstruction within the state right-of-way out in front of Robbie G, as I understand your testimony, you feel like that's something that you would have noticed and you would have written that up?

A: Yes.

. . . .

Q: But in terms of temporary parking there, that's probably not something that you would have written up…

A: No.

Q: … if you had noticed it?

A: No.

DOTD also submitted the deposition testimony of its engineer and District 8 Assistant District Administrator, Jonathan Lachney, P.E. Mr. Lachney testified that the state's right-of-way measures seven-and-a-half feet, with the portion of Robbie G's driveway taking up approximately six-and-a-half of those feet. He confirmed that there is no right-of-way agreement between the State and the owners of Robbie G's which would thus enable the restaurant to permit its

patrons to park on the right-of-way, and that he was not aware of any instance in which the restaurant reached out to inquire about parking on the right-of-way. Moreover, Mr. Lachney testified that the State does not generally encourage parking on its right-of-way, and that "[i]f Robbie G's asked to build a parking lot on our right-of-way, we would not agree. . . . [b]ecause it's not supposed to be occupied by right-of-way. The right-of-way is supposed to be for transportation purposes." He also stated that the roadway at issue "was not designed with parking in mind behind the curb[.]" Regarding notice on the part of DOTD, Mr. Lachney has never been aware of there being a problem in this location with people parking on the right-of-way. While Mr. Lachney has admittedly patronized Robbie G's on occasion and even driven by the restaurant during its busier hours, he never observed anyone parking on the right-of-way. Finally, he responded that it would be "extraordinarily unusual" for Mr. Lemoine to conduct inspections outside of his normal work hours on the weekends or between the hours of 5:00 p.m. and 8:00 a.m., as "[a]n inspection is a routine activity. He's inspecting the roadway to determine what activities may need to be performed by its workers."

On appeal, Mr. Norman sets forth "a plethora of questions" in an attempt to demonstrate that a genuine issue of material fact exists as to whether the State had constructive knowledge of the alleged defect, and thus owed a duty to Mr. Norman to prohibit parking along or adjacent to Jackson Street. Specifically, Mr. Norman's argument relies on the hypothesis that "[i]f DOTD personnel had performed inspections of Jackson Street/LA Highway 488 on a Friday night, it would have, undoubtedly, found numerous individuals parked on the shoulder and right of way near Robbie G's, all in violation of state law." However, we find that a genuine issue does not arise merely by asserting suppositions which are not

11

factually based. First, Mr. Norman alleges constructive notice may exist because "employees of DOTD are familiar with Robbie G's," citing Jonathan Lachney's testimony that he had eaten at Robbie G's on two occasions during the evening, despite testifying that he had never observed any vehicles presenting a hazardous obstruction on the right-of-way. He also argues that a genuine issue of material fact exists as to whether it was "negligent for Lemoine, a state employee[,] to violate department policy by conducting his day time inspections 'every two weeks' rather than on a biweekly basis[.]" While correct in finding that the term "biweekly" may be interpreted as meaning either every two weeks or twice a week,[4] Mr. Norman has not presented any evidence demonstrating that Mr. Lemoine was required to inspect the roadways twice a week, rather than every two weeks, as he has done since 2004.

Under these facts and circumstances, we find that DOTD's duty to maintain its highways and shoulders in a reasonably safe condition does not encompass conducting non-routine inspections of its roadways beyond its delineated obligations, where there is no indication that DOTD had received any complaints or otherwise had notice of any alleged defect on its right-of-way. Without any factual support rebutting the evidence submitted by DOTD on summary judgment, we simply cannot accept Mr. Norman's allegation that DOTD would have "easily discovered" the alleged problem even had it, *in arguendo*, gone above and beyond its obligations to conduct a Friday night inspection, as "tantamount to constructive notice." The unrebutted testimony of Kerry Lemoine

---

[4]As of the publication of this opinion, Merriam-Webster Dictionary defines the term "biweekly" as meaning:

    1: occurring every two weeks: FORTNIGHTLY [or]
    2: occurring twice a week

established that, in any event, temporarily parked vehicles on the state's right-of-way do not constitute permanent obstructions that warrant DOTD intervention. Moreover, while the term "biweekly" may be ambiguous, Mr. Norman has not otherwise demonstrated that Mr. Lemoine's inspections occurring every two weeks, as they have since 2004, are in violation of DOTD policy. Therefore, we hold that DOTD's failure to conduct inspections afterhours and during weekends neither implies nor imputes constructive knowledge on the part of the State.

While we find that DOTD did not owe a duty under these facts and circumstances, which renders a discussion of any breach thereof moot, we agree with our colleagues in the first and second circuits in holding the following:

> Parked vehicles on the roadway do not constitute a *defect in* the roadway. In *Naylor v. Louisiana Department of Public Highways,* 423 So.2d 674 (La.App. 1st Cir.1982), *writs denied,* 429 So.2d 127, 134 (La.1983), the court found that a temporary situation existing in the travel portion of a highway does not constitute a defect as contemplated by La.C.C. art. 2317. A "defect" is some flaw or fault existing or inherent in the thing itself. The temporary existence of other objects which may constitute a hazard does not constitute a defect in the premises. *Cf. Collins v. Christophe,* 479 So.2d 537 (La.App. 1st Cir.1985), *writ denied,* 483 So.2d 1021 (La.1986). Thus, the temporary parking of vehicles on the roadway is not a defect in the roadway for which the DOTD would be strictly liable under La.C.C. art. 2317.

*Kyle v. City of Bogalusa*, 506 So.2d 719, 726 (La.App 1 Cir. 1987); see also *Goodliffe v. State ex rel. Dep't of Transp. & Dev.*, 29,948, p. 6 (La.App. 2 Cir. 10/29/97), 702 So.2d 36, 40. Therefore, if a car parked *on* the roadway does not constitute a defect in the roadway for which DOTD would be liable, then, *a fortiori*, neither does a car parked *off* the roadway onto the right-of-way present an unreasonably dangerous condition. As such, even if Mr. Norman had sufficiently

rebutted DOTD's assertion of no duty with substantive factual support, a court would be hardly constrained to find that DOTD had not breached its duty toward Mr. Norman under these facts and circumstances. Moreover, no evidence has been offered to show that but for its failure to conduct inspections on weekends, evenings, and/or twice per week, DOTD would have taken steps to prohibit parking on its right-of-way when it did not regard temporarily parked vehicles as a permanent obstruction necessitating intervention and had no notice of any sight obstructions posed on which to act.

While the questions raised concern the material fact of DOTD's negligence, we are reminded that a genuine issue only exists where reasonable persons could disagree on the facts set forth before them. Merely posing unsupported allegations, inferences, and speculations is not sufficient to create a genuine issue of material fact where the summary judgment standard mandates that one defending his claims from dismissal set forth factual support sufficient to raise a genuine issue in dispute. Therefore, we decline to consider the questions raised on appeal where Mr. Norman has failed to present any factual support with respect to DOTD's knowledge of, ultimately, a non-defect. Thus, we find that DOTD was properly dismissed on summary judgment.

### Summary Judgment in Favor of MSE

We now address Mr. Norman's argument that the trial court erred in granting summary judgment in favor of the lessee and operator of Robbie G's Restaurant, MSE. The trial court dismissed suit against MSE after finding that there were no genuine issues of material fact and that MSE owed no duty to passing motorists when it allegedly created a hazard in front of its restaurant by

14

permitting, or failing to prohibit, parking on the state's right-of-way. Based upon the evidence presented, however, we find that a genuine issue of material fact remains as to whether the business activities of MSE in its operation of Robbie G's caused or contributed to the alleged sight obstruction and, further, whether that obstruction was a cause-in-fact of Mr. Norman's injuries.

In setting out to determine whether the trial court erred in granting summary judgment, we are called to first examine MSE's arguments before this court. Citing La.Civ.Code art. 2317.1, MSE contends that because it merely leases the property upon which the restaurant is situated and, further, because Mr. Norman's injuries occurred on the roadway, the law does not impose a duty upon it to protect Mr. Norman from a thing over which it has no ownership or control. We disagree for several reasons. First, and as discussed in more detail below, it is not undisputed that the accident occurred entirely on the roadway. Second, courts of this state have long held that liability under that article "is not based on ownership, but on care, custody, and control." *Klein v. Cisco-Eagle, Inc.*, 37,398, p. 12 (La.App. 2 Cir. 9/24/03), 855 So.2d 844, 852. While an individual injured as a result of an unreasonably dangerous condition existing on a landowner's property may proceed under either La.Civ.Code art. 2315 or 2317, both owners and occupiers of land are under the same duty "to discover any unreasonably dangerous conditions existing on their premises and to either correct those conditions or warn victims of their existence." *Amest v. City of Breaux Bridge*, 01-1034, p. 1 (La.App. 3 Cir. 12/12/01), 801 So.2d 582, 584.

At the outset, the law is clear that MSE may neither be insulated from a finding of duty nor absolved of liability simply on the basis of its status as non-owner when the general duty to not obstruct roadways is well-established, and it

15

has been held that similarly situated entities may owe a duty not to obstruct the vision of passing motorists depending on the facts presented. *See Hakim v. Albritton*, 552 So.2d 548 (La.App. 2 Cir. 1989), La.R.S 32:296, and La.R.S. 32:143.[5] Thus, it follows that the extent of the duty of a possessor of land to prevent injury to persons on adjacent property must be determined by the facts and circumstances of each case, and the question of whether the possessor caused or contributed to the accident is a factual issue which should be decided at trial. *See Savarese v. Bye*, 398 So.2d 1276 (La.App. 4 Cir. 1981). Finally, we note that while the existence of a duty is a question of law, the issue may be appropriately resolved by summary judgment "only when it is clear no duty exists as a matter of law; and, the facts or credibility of the witnesses are not in dispute." *Parish v. L.M. Daigle Oil Co., Inc.*, 98-1716, pp. 2-3 (La.App. 3 Cir. 6/23/99), 742 So.2d 18, 20. In light of the following evidence presented, therefore, we hold that the trial court erred in holding that MSE did not owe a duty, as a matter of law, on summary judgment without necessarily engaging with the facts of MSE's conduct in contributing to the accident under a formal duty-risk analysis.

On appeal, Mr. Norman asserts that a genuine issue of material fact exists as to whether MSE caused or contributed to the alleged sight obstruction that blocked Mr. Dubois's view. Specifically, he argues that MSE "repeatedly and continuously" allowed patrons of Robbie G's to park on the state's right-of-way in such a manner as to obstruct their view of the highway in attempting to exit the

---

[5]Under La.R.S. 32:196, which generally proscribes the act of one parking in certain enumerated places, no person shall park a vehicle in "[a]ny place where parking will obscure or obstruct visibility of any traffic control device." La.R.S. 32:196(A)(15). On the other hand, La.R.S. 32:296 specifically pertains to parking upon the highway shoulder and provides that, unless one of the enumerated situations not present in this case exists, then "[n]o person shall stop, park, or leave standing any unattended vehicle on any state highway shoulder, unless such stopping, parking, or standing is made necessary by an emergency[.]" La.R.S. 32:296(A).

premises.  In his Petition, Mr. Norman alleged that on the date of the accident, "a white pickup truck was parked on the state right-of-way of Hwy. 1208 at the Robbie G's business; Dubois states that this view of Jackson Street when he exited the parking lot was partially obstructed in the area proceeded."  The following deposition testimony of Mr. Dubois corroborates the allegations set forth in the Petition:

> I went to pull out, and . . . there was a jacked up four-wheel drive that was parallel with Jackson Street . . . . [The truck] was parked right along the edge of Jackson – well, right along the edge of the parking lot that is not marked.  And I couldn't . . . see the oncoming traffic.  So I eased out slowly, and I was gonna make a left-hand turn . . . .  [b]ut because of the truck blocking my view, I was gonna have to make a right[.]
>
> . . . .
>
> [I]f you're facing the building, on the right-hand side there's a light pole or some kind of pole there.  There's one green grassy spot in that parking lot right there.  That is where the truck was parked that was blocking my view. He was too close to Jackson Street, and there's nothing – there's no lines, there's no parking spot, nothing's labeled in that parking lot.  So the guy that parked there was in the worst spot he could be and when I pulled out it was the worst time I could be.

Mr. Dubois also affirmatively responded that the parking lot was congested on the night of the accident.  While he did not know whether the truck obstructing his view was a patron of Robbie G's,[6] Mr. Dubois testified, "personally, I wouldn't have parked there because I'd have been too close to the road to have somebody come down the road and veer off and hit my vehicle. . . .  But because of the horrible parking that they have there, everybody just parks wherever."

---

[6]Mr. Dubois testified that only after he had spoken with a police officer on the scene and cleared his thoughts following the accident, did he seek out the identity of the driver of the truck parked on the right-of-way.  However, in the midst of the accident, Mr. Dubois stated that the truck was no longer parked there.

Indeed, we agree with Mr. Norman's proposition pursuant to *Shephard ex rel. Shephard v. Scheeler*, 96-1690, 96-1720, p. 20 (La. 10/21/97), 701 So.2d 1308, 1319, that "[t]he primary safety purpose of the paved shoulder of the highway is to provide an area for motorists who require a momentary stop, and to protect a motorist who inadvertently leaves the roadway." While the facts in *Shephard* are somewhat distinct from those before us in that the Parish was assessed with liability for its employee temporarily parking on the shoulder of a highway, we nevertheless agree that "the continuous use of a fixed area of the shoulder as a parking lot or a regular embarkation point . . . unreasonably impairs its safety function as a recovery area." *Id.*

Mr. Norman also submitted the deposition of Hanner Jeansonne, a witness to the accident. When asked whether he had ever observed vehicles park in front of Robbie G's close to the edge of the right-hand lane of Jackson Street in his many times patronizing the restaurant, Mr. Jeansonne replied: "I'll be honest with you. I park where I see an opening. I mean, there's people that park in front of the store, and people park on the side." When asked if whether he ever had an opportunity to pull out of the restaurant's parking lot when it was busy, Mr. Jeansonne replied, "[I]t's always busy. . . . [W]hen it is busy, it is hard to get out that road . . . on the side." Ultimately, Mr. Jeansonne responded affirmatively that his vision had been obstructed when exiting Robbie G's parking lot on previous occasions.

While neither property owners nor possessors are tasked with insuring the safety of its visitors, it is nevertheless under a duty to operate its premises free of conditions posing an unreasonable risk of harm. *See Amest*, 801 So.2d 852. Our supreme court has held that "the question of whether a defect presents an

unreasonable risk of harm as 'a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts.'" *Broussard v. State ex rel. Office of State Bldgs.*, 12-1238, p. 9 (La. 4/5/13), 113 So.2d 175, 183 (quoting *Reed v. Wal-Mart Stores, Inc.*, 97-1174, p. 4 (La. 3/4/98), 708 So.2d 362, 364). In addition to holding that whether a possessor of land caused or contributed to the accident is a factual issue not suitable for resolution by summary judgment, we find that the question presented of whether the business activities of MSE contributed to the creation of an unreasonable risk of harm on the state's right-of-way is a "matter wed to the facts" that must be determined in light of the facts and circumstances of each particular case. *Id.*

In defending his claim against disposition by summary judgment, Mr. Norman's burden was only to present factual support sufficient to establish the existence of a genuine issue of material fact or that MSE was not entitled to summary judgment. La.Code Civ.P. art. 966(D)(1). It was not, as MSE contends on appeal, to produce factual support "sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial" as once required by the former summary judgment law. La.Code Civ.P. art. 966, Official Revision Comments – 2015, comment (j). We conclude that Mr. Norman has sufficiently raised a genuine issue of material fact with respect to whether a duty was owed by MSE and whether its conduct contributed to the accident.

V.

**CONCLUSION**

For the foregoing reasons, we affirm the trial court's ruling granting DOTD's Motion for Summary Judgment. However, we reverse its decision

granting MSE's Motion for Summary Judgment and remand the case for further proceedings consistent with this opinion. Costs are assessed equally to Michael Shelton Enterprises, Inc. and Simms Transportation, Inc.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**

**DANIEL NORMAN**

**VERSUS**

**MICHAEL A. SHELTON ENTERPRISE, INC., ET AL.**

Conery, J., concurring in part, dissenting in part.

I agree with the majority that the summary judgment granted in favor of Michael Shelton Enterprise, Inc. must be reversed.

I respectfully dissent, however, from the affirmation of the summary judgment entered in favor of DOTD. Rather, I find that the presence of genuine issues of material fact requires reversal of that ruling as well.

By its motion for summary judgment, DOTD asserts that no genuine issues of material fact exist as to its actual or constructive notice of a defective condition creating an unreasonable risk of harm as required by La.R.S. 9:2800. It is that notice "which gives rise to the obligation to take adequate measures necessary to prevent injury." *Johnson v. State, Dep't of Transp. & Dev.*, 17-0973, p. 7 (La.App. 1 Cir. 4/3/19), _ So.3d _, _ (citing *Rhodes v. State, Dep't of Transp. & Dev.*, 95-1848 (La. 5/21/96), 674 So.2d 239). In the event DOTD has such notice, it is required to "take reasonable measures to eliminate or reduce the risks associated with the dangerous condition or may warn the public of the danger, risk, or hazard involved." *Id.* at _ (citing *Tassin v. Bendel*, 07-1119 (La.App. 4 Cir. 7/9/08), 989 So.2d 217, *writ denied*, 08-1940 (La. 11/10/08), 996 So.2d 1069, *cert. denied*, 556 U.S. 1222, 129 S.Ct. 2161 (2009)).

Louisiana Revised Statutes 32:296 states in pertinent part:

> A.  No person shall stop, park, or leave standing any unattended vehicle on any state highway shoulder, unless such stopping, parking, or standing is made necessary by an emergency[.]
>
> . . . .
>
> B. In case of an emergency, the driver of a vehicle may lawfully operate the vehicle on any state highway shoulder in accordance with the normal standards of prudent conduct to protect himself and others from harm. When the emergency ends, the vehicle shall not be operated on the state highway shoulder.

Discussing La.R.S. 32:296 within the context of an accident involving a Parish truck parked partially on a highway shoulder, the supreme court explained that "[t]he primary safety purpose of the paved shoulder of the highway is to provide an area for motorists who require a momentary stop, and to protect a motorist who inadvertently leaves the roadway." *Shephard v. Scheeler*, 96-1690, p. 21 (La. 10/21/97), 701 So.2d 1308, 1319.  The court further noted that "[t]he occasional and transitory use of the shoulder by stopped vehicles is not incongruous with its function as a safety device.  Nevertheless, when the use of the shoulder is regular and routine, the safety function is mitigated." *Id.*  Reviewing the facts of the accident at issue, the supreme court pointedly explained that "the continuous use of a fixed area of the shoulder as a parking lot or regular embarkation point for Parish workers unreasonably impairs its safety function as a recovery area." *Id.*  Continuing, the supreme court stated:

> In the case sub judice, the probability of the harm and gravity of the harm caused by the Parish's parking [its] truck on the shoulder greatly outweighed the cost of avoiding the risk by parking elsewhere. The use of the shoulder in a consistent and continuous manner rather than a transitory manner, accompanied by the failure to utilize an available safe area to park the truck constituted an unreasonable risk of harm to motorists. We therefore hold that the Parish breached its duty to use the shoulder in a reasonably safe manner, and that this breach was a legal cause of the accident. The harm that occurred in the instant

2

case was the very risk of harm contemplated by the duty to use the paved shoulder in a reasonable manner, namely that a vehicle that leaves the traveled portion of the highway would collide with a vehicle stopped in the recovery area.

*Id.*

In this case, the fact that the DOTD shoulder was used as a parking lot by Robbie G's on a nightly basis creates an issue as to the duty and breach of duty on the part of DOTD. "[A] motion for summary judgment is inappropriate to dismiss a negligence action when questions of fact exist regarding the duties owed or breach of the same." *Simmons v. Sabine River Auth. Of La.*, 11-1146, p. 11 (La.App. 3 Cir. 8/15/12), 97 So.3d 1177, 1183, *writ denied*, 12-2043 (La. 11/16/12), 102 So.3d 40.

Moreover, as the Louisiana Supreme Court recently reiterated in *Broussard v. State, ex rel. Office of State Bldgs.*, 12-1238, p. 22 (La. 4/5/13), 113 So.3d 175, 191 "we emphasize again that each case involving an unreasonable risk of harm analysis must be judged under its own unique set of facts and circumstances."

Arguably, the continuous use of DOTD's highway right-of-way by Robbie G's during peak traffic hours on a heavily traveled roadway in effect created a trap not only for those attempting to enter the highway, but for those travelling on the roadway itself. The pictures introduced in evidence clearly demonstrate the vision limitations caused by the cars parked on DOTD's right-of-way. *See Shephard*, 701 So.2d 1308.

Given the facts and circumstances of this case, I find that genuine issues of material fact exist. Evidence introduced in connection with the motion for summary judgment at issue indicates that it was a well-known and longstanding community practice for Robbie G's patrons to park inside of the DOTD right-of-way. Mr. Dubois, for instance, described the parking at Robbie G's as "horrible" and that

3

"everybody just parks where you can." He described the situation as "something that you can drive by and see every day." When one witness to the accident, Mr. Jeansonne, was asked during his deposition whether his view of oncoming traffic had been hindered when leaving the restaurant, he explained that: "[I]t's always busy. I mean, I – you know, it is – when it is busy, it is hard to get out, and it's hard to get out that road, you know, on the side. I mean it is, you know." When subsequently asked whether "there is an obstruction to your vision when you're trying to look at the traffic," Mr. Jeansonne confirmed that "It's – it is."

Although a single car parked in a right-of-way for a short period time may not typically constitute a hazardous condition, the condition presented here, however, may be so pervasive that constructive notice could be inferred by a trier of fact making factual and credibility determinations. To the extent factual inferences are available from the evidence, including the photos, they must be construed in favor of the party opposing the motion. *See Willis v. Medders*, 00-2507 (La. 12/8/00), 775 So.2d 1049. Accordingly, I would reverse the summary judgment granted in favor of DOTD and remand the entirety of this matter for further proceedings.

For these reasons, I concur in part and dissent in part.

4